UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

THE ROBERT PLAN CORPORATION, et al,                Chapter 7
                                                   Case No. 8-08-74573-reg

                             Debtors.
----------------------------------------------------------------x

### *Memorandum Decision*

The matter is before the Court pursuant to an application by Kenneth Kirschenbaum, Esq.

(the "Trustee" or "Administrator"), the Chapter 7 trustee for the consolidated estates of The

Robert Plan Corporation ("RPC") and The Robert Plan of New York Corporation ("RPNY")

(collectively, the "Debtors").  The Trustee filed motions seeking authorization to (1) act as

administrator of RPC's pension plan and RPC's Retirement Savings Plan (the "Plan"), (2) retain

the Trustee and certain professionals to assist the Trustee in carrying out his duties as

Administrator, (3) pay specified expenses related to the administration of the Plan and (4) take

any actions the Trustee deems appropriate to bring the Plan into compliance with the ERISA

statutes and to terminate the Plan.  The U.S. Department of Labor ("DOL") has submitted no

objection to the Trustee's request to act as Administrator and terminate the Plan, but does object

to the remainder of the relief requested by the Trustee.  According to DOL, the Bankruptcy

Court lacks jurisdiction to rule on the relief requested in the motions because the motions are not

core proceedings, nor are they sufficiently related to the Debtors' cases.   DOL asserts that

because the Plan is not property of the Debtors' estates, and because it is likely that there are

1

sufficient funds in the Plan to cover the costs of administering the Plan, there is no basis for the Bankruptcy Court to assert jurisdiction over the Trustee as Administrator.

For the reasons set forth below, the Court finds that it has jurisdiction over the Trustee while he performs his obligations as Administrator. Because the Trustee is fulfilling his duties imposed by the Bankruptcy Code pursuant to 11 U.S.C. § 704(a)(11), the Trustee is subject to this Court's core jurisdiction while performing these duties. The Trustee also must comply with the requirements imposed by the Bankruptcy Code when the Trustee acts as Administrator pursuant to 11 U.S.C. § 704(a)(11). These requirements include seeking Court authorization to retain and authorize the payment of the Trustee's professionals. This Court has jurisdiction to authorize these requests as they constitute core matters arising in the Debtors' bankruptcy cases. The fact that the Trustee may seek payment of an award of this Court from non-estate assets does not limit or alter the Court's jurisdiction to make such an award. However, because the Trustee's request for entry of an order awarding fees for the retained professionals does not comply with the applicable Bankruptcy Rules and the E.D.N.Y. Local Bankruptcy Rules, the request is denied without prejudice. The Trustee's request for entry of an order authorizing the Trustee to seek compensation for his services as Administrator an hourly rate of $500.00, to pay expenses in connection with the performance of his duties in capacity as Administrator and to take any actions the Trustee deems appropriate to bring the Plan into compliance with the ERISA statutes is denied. The Bankruptcy Court's jurisdiction is limited to cases or controversies pursuant to the U.S. Constitution, Art. III, § 2. At this point, there is no case or controversy at issue between the Trustee and the DOL, or any other party, with respect to any actions the Trustee may take in the future as Administrator. The Trustee's requests to approve

2

his proposed hourly rate as Administrator and to authorize the Trustee to pay himself a specific sum as the Administrator are denied without prejudice.

### *Procedural History*

On August 25, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code").  On January 19, 2010, the cases were converted to Chapter 7.  The Trustee was duly appointed and qualified as acting trustee for both cases.  By order entered on September 9, 2010, the Debtors' cases were substantively consolidated.

On May 6, 2010 and June 10, 2010, the Trustee filed applications for orders authorizing the Trustee to act as Administrator and authorizing the Trustee to employ certain professionals. On August 6, 2010, the Trustee filed a supplemental affirmation in support of these prior applications.  A hearing was held on August 16, 2010, and both the Trustee and the Office of the United States Trustee appeared.  Thereafter, on September 1, 2010, DOL filed objections to the Trustee's applications ("DOL Objection"), and on September 3, 2010, the Trustee filed a reply. On September 17, 2010, the Trustee filed an exhibit consisting of an article from the Fall 2010 Journal of the National Association of Bankruptcy Trustees entitled "Terminating an ERISA Retirement Plan in Bankruptcy: Can a Bankruptcy Trustee Serve Two Masters?"  On September 29, 2010, the Court entertained further oral argument, and on October 13, 2010  DOL and the Trustee filed additional briefs.  Thereafter, the matter was marked submitted.

### *Facts*

The Plan is sponsored by RPC for the benefit of its employees and is a defined contribution plan governed by the terms of ERISA.  Prior to the Petition Date, RPC was the Plan

administrator.[1]  Upon conversion of the Debtors' cases and appointment of the Trustee, the

Trustee was required under § 704(a)(11) of the Code,[2] as amended by the Bankruptcy Abuse and

Consumer Protection Act of 2005, to continue to perform the obligations required of the plan

administrator, as defined in the Employee Retirement Income Security Act of 1974 ("ERISA").

Pursuant to Section 18.12 of the Plan, titled "Governing Law," the Plan "and the accompanying

Adoption Agreement shall be construed, administered and enforced according to ERISA, and to

the extent not preempted thereby, the laws of the Commonwealth of Massachusetts."[3]  There is

no dispute that the Plan assets are  excluded from the Debtors' estate pursuant to Bankruptcy

Code § 541(b)(7).

---

[1]Pursuant to Art. 1.01(c) of the Plan, under the Adoption Agreement, the Administrator is RPC as the employer, unless otherwise indicated.

[2]Section 704(a)(11) of the Code states:

> if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in Section 3 of the Employee Retirement Income Security Act of 1974 [("ERISA")]) of an employee benefit plan, [the trustee shall] continue to perform the obligations required of the administrator . . . .

11 U.S.C. § 704(a)(11).

[3]The remaining language in Section 18.12 of the Plan reads, without a separate header titled "Section 18.13," "Nothing contained in Sections 8.02, 19.01 or 19.05 or this Section 18.13 shall be construed in a manner which subjects a governmental plan (as defined in [Internal Revenue] Code Section 414(d)) or a non-electing church plan (as described in [Internal Revenue] Code Section 410(d)) to the fiduciary provisions of Title I of ERISA." 26 U.S.C.A. § 414 reads in relevant part, "[T]he term 'governmental plan' means a plan established and maintained for its employees by the Government of the United States." 26 U.S.C.A. § 414. Further, Section 410(d) of the Internal Revenue Code relates to churches maintaining a church plan.  The Court interprets this part of Section 18.12 to indicate that the Plan is neither a government plan nor church plan, and that the Plan is governed by ERISA.

The Trustee states that in his capacity as Administrator, he will terminate the Plan and distribute the funds to the Plan participants.  As Administrator the Trustee must also determine whether the Plan has been properly administered by Plan fiduciaries and whether legal action is warranted against any party or person for violation of the Plan provisions or ERISA laws.  The Trustee as Administrator must also determine if any amendments to the Plan are necessary and if any expenditures or allocations are necessary.  The Trustee anticipates he will incur significant expenses in meeting his obligations as Administrator including locating Plan participants and obtaining their cooperation in the termination and liquidation process.

By application dated May 6, 2010, the Trustee sought authorization to  act as Administrator at an hourly rate of $500.00, and sought authorization to retain the services of David J. Witz as pension consultant, Kirschenbaum & Kirschenbaum, P.C. as legal counsel, and Travis Whitfield, CPA as independent auditor ("First Application"). In the First Application, the Trustee was not seeking compensation of any of these professionals, but indicated that any compensation would be conditioned upon further application and approval by the Court.

According to the representations made by the Trustee in the First Application, as of May 6, 2010, there were approximately 275 participants and eight million dollars ($8,000,000.00) invested in the Plan fund.  There was also $130,000.00 in an account known as a forfeiture fund (the "Forfeiture Fund"), which is comprised of employer contributions to employees who left

employment before the retirement benefits vested.  Pursuant to Sections 19.05[4] and 20.14[5] of the

Plan documents and Sections 1103(c)(1),[6] 1104(a)(1)(A)(ii),[7] and 1108(c) of ERISA, payments

for the Trustee and retained professionals are to be made from the Plan assets.  There is no

requirement under ERISA that the Administrator obtain an order prior to paying for the costs of

administering the Plan.  Because the Trustee believed the Plan was fully funded, the Trustee

initially asserted that he would seek payment only from the Plan assets, specifically, the

Forfeiture Fund.   However, to the extent that the amount in the Forfeiture Fund would be

insufficient to satisfy the Trustee's expenses and  compensation, the Trustee contemplated

deducting money from each participant's account who did not respond to the initial notice of

termination.  The Trustee further indicated that any funds remaining in the Forfeiture Fund after

all expenses were paid would be distributed to the Plan participants or possibly to the Debtors'

---

[4]"[A]ll reasonable costs and expenses (including legal, accounting, and employee communication fees) incurred by the Administrator and the Trustee in administering the Plan and Trust may be paid from the forfeitures (if any) resulting under Section 11.08, or from the remaining Trust Fund."

[5]
"[A]ny and all expenses, including without limitation legal fees and expenses of administrative and judicial proceedings, reasonably incurred by the Trustee in connection with its duties and responsibilities hereunder shall . . . be paid either from forfeitures resulting under Section 11.08, or from the remaining Trust Fund and shall, unless allocable to the Accounts of particular Participants, be charged against the respective Accounts of all Participants, in such reasonable manner as the Trustee may determine."

[6]"[T]he assets of a [401(k)] plan . . . shall be held for the exclusive purpose . . . of . . . defraying reasonable expenses of administering the plan."

[7]"A fiduciary [under a retirement plan] shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of defraying reasonable expenses of administering the plan." ERISA § 1104(a)(1)(A)(ii).

estates.  The Trustee did not initially contemplate seeking payment from the Debtors' estate and represented that any payment he sought for himself or the retained professionals would be limited to Plan assets.

By supplemental application filed on June 10, 2010, the Trustee sought authorization to pay the above-named pension plan experts and consultants up to certain specified limits subject to his discretion from the Plan funds ("Second Application").  On August 6, 2010, the Trustee filed a supplemental affirmation in support of the Second Application, wherein the Trustee sought authorization to take whatever action the Trustee deems appropriate to bring the Plan into compliance and to terminate the Plan ("Second Amended Application").  According to the Trustee, the Trustee's professionals have determined that the Plan was not in compliance with ERISA and that almost 100 additional participants had to have funds restored to their ERISA accounts.  Consequently, there are now 375 total participants entitled to distribution from the Plan, and as a result most of the Forfeiture Fund has been exhausted. In order to fund the costs associated with  bringing the Plan into compliance with the applicable rules and regulations, restore funds to participants' accounts, file the necessary tax returns, provide support to Plan participants and continue with termination of the Plan, the Trustee directed that each Plan participant's account be surcharged 3%, which has been placed into an expense account called a "Pguy Account."

Annexed to the Second Amended Application, which was served only upon the Office of the United States Trustee and DOL, are invoices from the Trustee, Kirschenbaum & Kirschenbaum, P.C., David Witz and Travis Whitfield for services rendered as of the date of the Second Amended Application.  Pursuant to the Second Amended Application, the Trustee seeks

7

authorization to pay himself $40,940.00 on an interim basis as compensation for his services as Administrator.  The Trustee also seeks entry of orders approving the employment of the following professionals in connection with administration of the Plan, and seeks authorization to pay the professionals the following amounts as interim fees:

1. David J. Witz as Pension Consultant, authorizing payment of $27,631.25;

2. Kirschenbaum & Kirschenbaum, P.C. as legal counsel, authorizing payment of $13,432.75;

3. Travis Whitfield, CPA as accountant, authorizing payment of $6,900; and

4. Fidelity Employer Services Company ("Fidelity"), the existing Plan third party administrator and directed trustee, and Millenium Trust Company, LLC ("Millenium") as the third party administrator for the Plan termination process, authorizing payment of their service charges at the Trustee's discretion as the charges become due and owing.

According to the Trustee, he has been fielding a number of calls from concerned Plan participants regarding the Plan, and the only source of funds the Trustee has to cover the additional expenses being incurred in the administration of the Plan is the Pguy Account.  The Trustee represents that there is $300,000 in the Pguy Account.  If the amounts in the Forfeiture Fund and the Pguy Account are exhausted, the only other source of funds to reimburse expenses would be the Debtors' estates.   In addition, the Trustee no longer agrees to limit his recovery for costs, fees and expenses solely from the Plan assets, and reserves the right to seek payment from the Debtors' estates to cover any further expenses associated with the windup and termination of the Plan above and beyond the amounts in the Pguy Account.

 ***Objection by DOL***

DOL does not dispute that the Trustee is required to act as the

Administrator pursuant to the Plan documents and the applicable ERISA definitions.  DOL also

does not object to the Trustee's decision to terminate the Plan because this decision would not be

a fiduciary decision governed by the fiduciary provisions of ERISA.  However  DOL opposes

the Trustee's request for Bankruptcy Court authorization to retain and pay professionals pursuant

to Bankruptcy Code §§ 327 and 330, respectively, and to pay the Trustee for services performed

as Administrator.  DOL also objects to the entry of any order specifically  authorizing the

Trustee to take any action he deems appropriate to bring the Plan into compliance with the

applicable ERISA laws.

DOL's argument is based on the premise that this Court lacks jurisdiction over the

Trustee's actions when he is acting in his capacity as Administrator of the Plan.  According to

DOL, when Congress imposed upon Chapter 7 trustees the duty to administer ERISA plans in

2005, it intentionally avoided creating any jurisdictional link between an ERISA estate and a

debtor's bankruptcy estate, and excluded employee contributions to ERISA plans in the

definition of property of the debtor's estate set forth in Bankruptcy Code § 541(b)(7).  Because

the Plan assets are not property of the bankruptcy estate any actions the Trustee takes as Plan

administrator can have no effect on the Debtor's estate.  According to DOL, the Bankruptcy

Court's jurisdiction would not extend to any acts taken by the Trustee involving these non-estate

assets.  The only exception DOL concedes is that this Court may have non-core "related to"

jurisdiction over a chapter 7 trustee's request for an award of fees incurred in the discharge of his

duties as plan administrator if the fees were to be paid from the debtor's estate. However, in this

case, DOL believes that the Plan assets are sufficient to pay the Trustee and his professionals, and therefore the Court does not have "related to" jurisdiction over the Trustee's requests.

DOL claims  support for its argument in the Supreme Court's observation that "[b]ankruptcy jurisdiction, at its core, is in rem . . .  Bankruptcy jurisdiction, as understood today and at the time of the framing, is principally in rem jurisdiction." *Central Va. Cmt. College v. Katz,* 546 U.S. 356, 362, 370 (2006).  DOL also argues that because the actions taken by a Chapter 7 trustee in administering an ERISA plan do not involve the restructuring of the Debtor's relations with their creditors, it does not trigger a bankruptcy court's core jurisdiction.


According to DOL, § 704(a)(11) does not invoke a right created by the Bankruptcy Code so there can be no "arising under" jurisdiction with respect to the relief requested in the First Application and the Second Application.  The fact that the matter arises during the pendency of the bankruptcy case is according to DOL an insufficient basis to create "arising in" jurisdiction. DOL argues that because the tasks assigned to the Trustee pursuant to Section 704(a)(11) do not occur only in bankruptcy, there is no "arising in" jurisdiction over these matters.  In addition, DOL argues the relief sought by the Trustee does not involve the administration of the estate, which is a requirement of a core proceeding under 28 U.S.C. § 157(b)(2)(A).

DOL also asserts that the Bankruptcy Court does not have "related to" jurisdiction over these matters.   DOL agrees with the Trustee that the test for determining whether a civil proceeding is non-core but related to a bankruptcy case  is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered." *Turner v. Ermiger,* 724 F.2d 338, 341 (2d Cir. 1983); *Pacor v. Higgins,* 743 F.2d 984, 1499 (3d Cir. 1984).

DOL urges the Court to find that the potential effect of an award by the Court on the administration of the Debtors' estate is too remote to have any effect on the Debtors. The Plan had an account balance of more than $7.6 million on July 10, 2010, which should be adequate to cover any shortfall in the Pguy Account.  According to DOL, there is no credible basis to believe that the $300,000.00 in the Pguy Account is insufficient to fund the administration and termination of the Plan.  DOL argues that the possibility that the Plan funds will be exhausted from the costs of administering and terminating the Plan "appears to be more of a reflection of the Trustee's exorbitant hourly fee and the manner in which he is employing service providers than a legitimate concern."   DOL Objection, p. 13.  According to DOL, there is nothing precluding the Trustee from further assessing the participant Plan accounts to fund any additional costs of Plan administration incurred by the Trustee.

DOL makes clear that under the Plan the Trustee does not need approval from any court to retain and pay professionals, or to carry out his responsibilities as Administrator under the Plan.  Under ERISA the plan administrator has the power to terminate the plan, including hiring and retaining professionals to assist him and to pay such service providers "reasonable compensation" from plan assets.  29 U.S.C. § 1108(b)(2). DOL speculates that one of the reasons the Trustee brought the Motion was to obtain a release from any possible wrong he may commit while administering the Plan under the doctrine of derived judicial immunity.[8]  According to DOL, there is no basis in law to grant such relief to  the Trustee  and therefore by seeking Court approval for the disposition of non-estate assets, the Trustee is indirectly seeking to obtain a

---

[8] The doctrine of derived judicial immunity provides a bankruptcy trustee with immunity in the exercise of his business judgment, where he acts in accordance with an order of the court, after candid disclosure and on notice to interested parties. *Bennett v. Williams*, 892 F.2d 822 (9th Cir. 1989).

release from potential fiduciary liability under ERISA, which is denied to all others who administer ERISA plans.

The last argument made by DOL addresses the difficulty it sees in awarding fees under Bankruptcy Code § 330, which would create a liability of the Debtors' estates, and having the award paid from non-estate Plan assets.  An award under § 330(a) creates  an administrative expense obligation of the bankruptcy estate, and any attempt to enforce that obligation against an ERISA plan or any other third party would require a separate proceeding, further complicating the bankruptcy proceedings.

To the extent the Court finds it has jurisdiction over the request to retain and pay professionals, and awards any compensation to the Trustee and his professionals, DOL urges the Court to find that the $500.00 hourly rate charged by the Trustee is not reasonable based on the customary compensation charged by plan administrators in the range of $200.00 to $300.00 per hour, and to limit the Trustee's interim compensation to $200.00 per hour.  DOL also requests that if the Court entertains the request for payment of fees of the Trustee's professionals, that the Court impose a 30% holdback on any sum awarded to professionals.  DOL requests that the awards be made on an interim basis, subject to further review by the Court, after DOL has completed its review of the fees requested.

## *Discussion*

Because DOL has questioned the very jurisdiction of this Court to  grant any of the relief requested by the Trustee, except for the request to authorize the Trustee to act as Administrator and terminate the Plan, this issue must be resolved prior to reviewing the specific relief requested by the Trustee.

12

Prior to enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), the Bankruptcy Code contained no express provision imposing upon the Chapter 7 trustee the responsibility for administering retirement plans.  Courts were divided  over whether, upon the filing of a petition under Chapter 7 of the Bankruptcy Code, the chapter 7 trustee was responsible for acting as the plan administrator, or whether the prebankruptcy plan administrator continued to act as plan administrator until he or she resigned after making arrangements for a successor to take his or her place.  *In re NSCO, Inc.,* 427 B.R. 165, 174 (Bankr. D. Mass. 2010) (citing *In re New Center Hosp.,* 200 B.R. 592, 593 (E.D. Mich. 1996) and *Chambers v. Kaleidoscope, Inc., Profit Sharing Plan and Trust,* 650 F. Supp. 359, 369 (N.D. Ga. 1986) as examples of the diverging lines of case law).  In 2005, as part of BAPCPA, a new provision was added to the Chapter 7 trustee's duties.  Pursuant to Bankruptcy Code § 704(a)(11), the Chapter 7 trustee is directed to continue to perform the obligations required of a Plan administrator, as defined by ERISA, "if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator . . . of an employee benefit plan."  11 U.S.C. § 704(a)(11).   As a result, Section 704(a)(11) has raised new issues concerning the extent to which the Bankruptcy Court has jurisdiction over a trustee's actions when acting in place of the debtor as a retirement plan administrator, and the case law on this issue is unsettled.

### a. Fiduciary Duties of Chapter 7 Trustee

To properly consider the jurisdictional issues before the Court, an examination of the role of the Chapter 7 trustee under the Bankruptcy Code is in order.  Bankruptcy trustees are fiduciaries, and the obligations imposed upon them to administer the bankruptcy estate are fiduciary obligations as well.  *In re NSCO, Inc.,* 427 B.R. at 174 (citing *Hartford Underwriters*

13

*Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 12, 120 S. Ct. 1942, 147 L.Ed.2d 1 (2000)).

A chapter 7 trustee's primary obligation is to "collect and reduce to money the property of the

estate for which such trustee serves, and close such estate as expeditiously as is compatible with

the best interests of parties in interest[.]" 11 U.S.C. § 704(a)(1). "'As an officer of the Court and

as a representative of the Debtor's creditors, the Trustee has a duty to realize the maximum return

for the estate for further distribution to the Debtor's creditors.'" *In re Balco Equities, Ltd., Inc.,*

323 B.R. 85, 97 (Bankr. S.D.N.Y. 2005) (citing *In re Mondie Forge, Inc*., 148 B.R. 499, 502

(Bankr.N.D.Ohio 1992)). "A trustee has the statutory duty to protect and preserve property of

the estate for the purpose of maximizing a distribution to creditors." *In re Ngan Gung Rest*.,

254 B.R. 566, 570 (Bankr.S.D.N.Y.2000). Bankruptcy trustees in the Second Circuit, along with

the Ninth and Eleventh Circuits, are held to a simple negligence standard with regard to breach

of the trustee's fiduciary duties. *Gorski v. Kirschenbaum (In re Gorski)*, 766 F.2d 723, 726 (2d

Cir. 1985).

Section 704 of the Bankruptcy Code enumerates the specific obligations of the chapter 7

trustee, which include marshaling assets of the debtor for distribution to creditors, objecting to

the allowance of filed claims, filing tax returns as required under relevant non-bankruptcy

statutes, and making a final report and filing with the Bankruptcy Court a final account of the

administration of the estate. 11 U.S.C. § 704(a). While most of these obligations are clearly in

furtherance of the collection and distribution of estate assets for the benefit of creditors, trustees

have additional obligations under the Bankruptcy Code which are not specifically tied to this

function. These obligations, including the responsibility for performing the obligations required

14

of a plan administrator, emanate solely from the Bankruptcy Code.   Subsection (a)(11) of this section, entitled "Duties of trustee," provides that the trustee shall:

> if, at the time of the commencement of the case, the debtor (or any entity
> designated by the debtor) served as the administrator (as defined in section 3 of the Employee Retiremen
> of an employee benefit plan, continue to perform the obligations required of the administrator.

11 U.S.C. § 704(a)(11).

Bankruptcy Code § 704(a)(11), which requires the Chapter 7 trustee to act as the plan administrator, imposes upon the Chapter 7 trustee another layer of fiduciary obligations under the ERISA laws.   Section 3 of ERISA defines a "fiduciary" as  a person or entity having "any discretionary authority or discretionary responsibility in the administration of" a retirement plan. 29 U.S.C. § 1002(21)(A)(iii).  Although a bankruptcy trustee is not specifically included in the definition of "administrator" under ERISA, a bankruptcy trustee will be considered an ERISA fiduciary to the extent the trustee exercises discretion over how the plan is terminated.   *Beddall v. State St. Bk. & Trust Co.,* 137 F.3d 12, 18 (1st Cir. 1998).  A plan administrator is required in order to assume fiduciary responsibility for the Plan in furtherance of the goal of ERISA to "prevent the misuse and mismanagement of plan assets."  *Mass. Mut. Life Ins. Co. v. Russell,* 437 U.S. 134, 140 n.8 (1985).  By virtue of Bankruptcy Code § 704(a)(11), this additional fiduciary responsibility to protect and properly manage non-estate assets in compliance with ERISA rests with the bankruptcy trustee.  The bankruptcy trustee is also charged with following the relevant ERISA statutes applicable to plan administrators and adhering to the obligations imposed upon the plan administrator under the plan documents.  The standards for Plan

termination are found in the ERISA rules and regulations, created pursuant to 29 U.S.C. §§ 1135[9], 1104(a)[10], and 1103(d)(1).[11]

Section 704(a)(11) is unique in that it imposes upon the Chapter 7 trustee additional fiduciary obligations regarding assets which are not property of the debtor's bankruptcy estate, it is not the only subsection which effectively requires the trustee to comply with non-bankruptcy statutes.  For example, all bankruptcy trustees are charged with complying with the relevant requirements under the Internal Revenue Code and must file tax returns on behalf of the respective debtors.  Likewise, under Bankruptcy Code § 704(a)(12), bankruptcy trustees must transfer patients from closing health care businesses to appropriate health care businesses, presumably in compliance with any applicable health and safety regulations.  The fact that the trustee is charged with following non-bankruptcy law in discharging those duties set forth in the

---

[9]"Subject to subchapter II of this chapter and section 1029 of this title, the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter. Among other things, such regulations may define accounting, technical and trade terms used in such provisions; may prescribe forms; and may provide for the keeping of books and records, and for the inspection of such books and records (subject to section 1134(a) and (b) of this title)."  29 U.S.C.A. § 1135.

[10] "(a) Prudent man standard of care (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (I) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."  29 U.S.C. § 1104(a).

[11]"Upon termination of a pension plan . . . . the assets of the plan shall be allocated in accordance with the provisions of section 1344 of this title, except as otherwise provided in regulations of the Secretary."  29 U.S.C. § 1103(d)(1).

Bankruptcy Code does not remove the trustee from the reach of the Bankruptcy Court's jurisdiction.  The trustee remains a creature of the Bankruptcy Code, and all of the relevant provisions of the Bankruptcy Code apply to the trustee regardless of whether the trustee's conduct is subject to other non-bankruptcy law.

### b. Jurisdiction over Core and Non-Core Proceedings

The scope of the Bankruptcy Court's jurisdiction is set forth in 28 U.S.C. § § 1334 and 157(a). The Bankruptcy Court has jurisdiction over all cases under title 11 and all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) & (b), 157(a).  Once the Bankruptcy Court acquires jurisdiction over a bankruptcy case pursuant to 28 U.S.C. § 1334, as delegated to it by § 157, the Bankruptcy Court's power to adjudicate a matter in a bankruptcy case is further refined depending on whether the proceeding is "core" or "non-core."  28 U.S.C. § 157(b), (c).  In core proceedings, those that "aris[e] under title 11" or "aris[e] in a case under title 11," 28 U.S.C. §157(b)(1), the Bankruptcy Court has the power to hear and to enter a final order.  In contrast, in non-core proceedings, that are "otherwise related to a case that is under title 11," absent consent, the Bankruptcy Court must submit findings of fact and conclusions of law to the District Court for final determination.  28 U.S.C. § 157(c)(1).  *See AB & C Group, Inc.*, 411 B.R. 284, 290 (Bankr. N.D.W.Va. 2009).  The Bankruptcy Court determines, in the first instance, whether a proceeding is core or non-core.  *Id*.  According to the Second Circuit, Congress intended an expansive definition of "core" bankruptcy proceedings to prevail.  *See Baker v. Simpson (In re Baker),* 613 F.3d 346, 351 (2d Cir. 2010) (citing *In re CBI Holding Co.*, 529 F.3d 432, 460-61 (2d.Cir. 2008)).  The Second Circuit has elected to give "core" proceedings "a broad interpretation that is

17

close to or congruent with constitutional limits." *Id.* (citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)); *see also In re S.G. Phillips Constructors,* 45 F.3d 702, 705 (2d Cir. 1995).

There is no dispute between the Trustee and DOL, and the case law is clear, that an issue is core if it "would have no existence outside of the bankruptcy." *Baker v. Simpson,* 613 F.3d at 351(other citations omitted); *see also In re Braniff Intern. Airlines, Inc.*, 159 B.R. 117, 125 – 126 (E.D.N.Y. 1993) (stating that "[c]ore proceedings are matters which govern the administration of the debtor's estate and are proceedings traditionally within the realm of the bankruptcy court's equitable authority"). The "relevant inquiry," in determining if an issue is core, "is whether the nature of [the] adversary proceeding [or motion], rather than the [legal] basis for the claim, falls within the core of federal bankruptcy power." *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990).

A proceeding "arises under" Title 11, and is therefore within the Court's core jurisdiction, if it concerns substantive rights created by the Code. *In re Housecraft Industries USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002) (stating that "[b]ecause the plaintiffs' §§ 548 and 549 claims clearly invoke substantive rights created by bankruptcy law, they necessarily "arise under" Title 11); *In re Mid-States Express, Inc.,* 2010 WL 2653376  *4 (Bankr. N.D. Ill) ("*Mid-States Express*") (Arising under jurisdiction exists where the "Bankruptcy Code, in a strong sense, is the source of the right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law.").

Core jurisdiction over a proceeding "arising in a case under Title 11" is less well defined. Courts often construe "arising in" to refer to matters "that are not based on any right expressly created by title 11, but nevertheless, would have no existence

outside of the bankruptcy" such as the filing of a proof of claim or an objection to the discharge of particular debt.  *Matter of Wood*, 825 F.2d 90, 97  (5th Cir. 1987); *see also  Mid-States Express*, 2010 WL 265337 *4; *In re NSCO, Inc.,* 427 B.R. at 175.  "Arising in" jurisdiction has been described as matters which do not fit within "arising under" jurisdiction but still come within the Bankruptcy Court's jurisdiction because of the legal nature of the proceeding, not the factual context.  *Mid-States Express,* 2010 WL 2653376 *5 (other citations omitted).

Finally, the Court maintains non-core jurisdiction over proceedings that are "related to" the bankruptcy case.  28 U.S.C. § 157(c)(1).  A proceeding is "related to" a bankruptcy case where the "outcome [of the proceeding] might have any 'conceivable effect' on the bankruptcy estate", or any "significant connection" with the bankruptcy estate.  *Publicker Indus., Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir.1992).  The Bankruptcy Court may not issue determinations on non-core "related to" proceedings without consent from the parties before the court.  28 U.S.C. § 157(c)(1).

### c) The Court Has Subject Matter Jurisdiction Over Proceedings Regarding the Trustee's Obligations Under 704(a)(11)

Section 704(a)(11) of the Bankruptcy Code is the source of the Trustee's obligations as Administrator in this case, and gives this Court core jurisdiction over the Trustee's actions as Administrator.

As of the Petition Date, RPC served as the administrator of the Plan.  Upon conversion of the Debtors' cases, the Trustee was required under the Bankruptcy Code to perform the obligations required of RPC as the Plan administrator.  This obligation is only imposed on the Trustee pursuant to the Bankruptcy Code.  While the Trustee must now comply with the relevant ERISA statutes in carrying out this function, the Court still has jurisdiction over the Trustee's actions as

Administrator.  To find otherwise would effectively place the Trustee outside the reach of the

Bankruptcy Court while the Trustee is carrying out a duty mandated by the Bankruptcy Code.

Despite the fact that the Chapter 7 Trustee is obligated under the Bankruptcy Code to act

as plan administrator, several courts have concluded that the Bankruptcy Court does not have

jurisdiction over aspects of the Trustee's administration of a debtor's employee benefit plan.  In

*Mid-States Express*, the Bankruptcy Court was asked to determine, *inter alia*, whether it had

subject matter jurisdiction to authorize the chapter 7 trustee to pay administration expenses

associated with the trustee's liquidation of the debtor's employee benefit plan  solely from the

plan funds.  The Bankruptcy Court concluded that Section 704(a)(11) was not supplemental to

any substantive right created by the Bankruptcy Code, and merely put the chapter 7 trustee in the

shoes of the ERISA plan administrator.  As such the chapter 7 trustee's  rights and obligations as

the plan administrator emanated solely from the  ERISA statutes and were not altered by the

Bankruptcy Code. According to the Bankruptcy Court, there was no "arising in" jurisdiction

over the request by the trustee to pay the administrative expenses incurred in administering the

plan because the underlying action was to adjudicate non-bankruptcy rights governed by

applicable ERISA law and regulations.  The Bankruptcy Court also concluded that there was no

"arising under" jurisdiction because the substantive rights at issue were created by ERISA law.

Operating under the assumption that a proceeding "arises under" title 11 when the Code "is the

source of the right or remedy, rather than just a procedural vehicle for the assertion of a right

conferred by some other body of law," the *Mid-States Express* Court stated "it cannot be said

that section 704(a)(11) invokes a right created by the Bankruptcy Code."  *Mid-States Express* at

*4–*5. The *Mid-States Express* Court also concluded that it did not have "related to" jurisdiction

either because the trustee was not requesting the Bankruptcy Court to do anything that the trustee could not already do without a court order. Because the trustee as the plan administrator already had the authority under ERISA law and under the plan documents to pay the costs of liquidating the plan from the plan funds, any order authorizing such payment could have no effect on the debtor's bankruptcy estate. Furthermore, if the trustee failed to disburse the corpus and pay the expenses, there would be no liability incurred by the estate because the trustee could only be forced to pay from the plan, not the estate. *Id., *8.

Similarly, in *In re AB&C Group, Inc.,* the Chapter 7 trustee sought approval from the bankruptcy court to retain the services of a local bank which had performed certain administrative functions for the debtor prepetition under a defined contribution plan. The trustee also sought entry of an order declaring that his duties under Bankruptcy Code § 704(a)(11) had been fulfilled, and exculpating him from liability under the ERISA statutes. DOL objected, arguing that the Bankruptcy Court lacked jurisdiction to rule on the reasonableness of the fees to be paid to the bank from plan assets, or to rule on whether the trustee was free from liability under applicable ERISA law. The Bankruptcy Court for the Northern District of West Virginia sided with DOL, finding that while the Bankruptcy Court had jurisdiction to authorize the trustee to retain professionals under Bankruptcy Code § 327, its jurisdiction did not extend to the payment of these professionals under Bankruptcy Code §§ 330 and 331. The dispositive fact according to the *AB&C Group, Inc.* Court was that plan funds, which were non-estate funds, would be used to pay the professionals. *Id.* at 291. The court relied on the prior decisions *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989 (Bankr. N.D.Ill. 1990) and *David & Hagner v. DHP, Inc.,* 171 B.R. 429 (D.D.C. 1994), for the proposition that "§ 327 holds no authority for

21

this court to grant compensation to the Bank from the [defined contribution] Plan" and "does not provide a jurisdictional basis premised upon 'arising in' the bankruptcy case or 'arising under' chapter 11." *Id.*

The Court understands the reasoning in *Mid-States Express* and *AB & C Group*, *Inc.,* however, the Court disagrees that the focal point for determining the jurisdiction of this Court over the Trustee's requests is the source of the compensation. The relevant issue is that the only basis for the Trustee to receive any compensation derives solely from the Bankruptcy Code. Describing § 704(a)(11) as a mere procedural vehicle for the assertion of rights under ERISA law, as did the Court in *Mid-States Express*, minimizes the complex relationship between the ERISA laws and the Trustee's obligations and rights as defined in the Bankruptcy Code. While § 704(a)(11) imposes upon the Trustee the requirement to comply with ERISA laws in fulfillment of his duties thereunder, one can find no support for concluding that the Trustee is therefore divested of his obligations as the Chapter 7 Trustee when acting in the role of plan administrator. For the same reason there is no support for the conclusion that this section divests the Bankruptcy Court of its jurisdiction over the Trustee's actions as Administrator. He is a creature of the Bankruptcy Code and but for his appointment under the Code, he would have no role as administrator of the Plan. To the extent that the Trustee's duties over the Plan arise out of ERISA, they do so only by operation of § 704(a)(11). *In re NCSO*, *Inc*. at 180. Thus, § 704(a)(11), not ERISA, is the source of the Trustee's obligations. The Trustee's § 704(a)(11) duties are an essential part of the total administration of the Debtors' cases. *C.f. In re Baker* at 351 (finding that adjudication of the Debtor's counsel's malpractice and other claims was "an essential part of administering the estate") (other citations omitted). This Court does not "lose"

22

jurisdiction over the Trustee when he acts as Administrator any more than the bankruptcy court loses jurisdiction over a trustee when he files tax returns for a debtor or he arranges for patients being treated by a debtor hospital to move to another facility. The Trustee, while acting as the Administrator, is still subject to the requirements imposed on chapter 7 trustees, and there is nothing in the Bankruptcy Code to suggest that the Trustee is somehow exempt from these requirement because he is acting as Administrator.

This Court also disagrees with the analysis in *AB & C Group, Inc.* While the *AB&C Group, Inc.* Court recognized that employment applications by bankruptcy trustees "arise in" the bankruptcy case and "arise under" title 11 even where the trustee seeks to employ professionals solely to administer a non-estate asset such as the Plan, it concluded that its jurisdiction did not extend to awarding fees under Section 330 of the Bankruptcy Code. The Court's analysis was based in large part on two decisions, *In re McDonald Bros. Constr., Inc.*, and *David & Hagner v. DHP, Inc.* In *In re McDonald Bros. Constr., Inc.,* the issue before the Bankruptcy Court was whether counsel to the debtor was required to file a fee application in order to receive payment for its services from non-estate funds. Judge Wedoff specifically found that the Bankruptcy Court had jurisdiction to determine whether to permit counsel to the debtor to use the retainer absent entry of a corresponding order awarding fees, because the issue arose in the debtor's bankruptcy case under 28 U.S.C. § 1334(b). *Id.* at 992 (citing *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987)). In that context, Judge Wedoff held that the fee application procedure set forth in Sections 330 and 331 was not applicable because the retainer was not estate property. *Id.* at 994. Furthermore, Section 329 of the Code provides a mechanism for judicial review of fees paid to counsel to the debtor, regardless of the source of the fees. *Id.* at 997. In turn, the Bankruptcy

Court in *David & Hagner v. DHP, Inc*. relied on the *McDonald Bros. Constr., Inc*. decision to conclude that §§ 330 and 331 do not apply to payments received by debtors' counsel from non-estate sources. *Id.* at 435-36.

Neither *In re McDonald Bros. Constr., Inc.*, nor *David & Hagner v. DHP, Inc.* support the proposition that this Court lacks jurisdiction to award fees to a chapter 7 trustee's duly retained professionals who assist the trustee in carrying out his obligations under the Bankruptcy Code. In fact, neither case involved chapter 7 trustees. The fact that the Trustee may actually collect payment on any award from non-estate assets does not change the nature of the request, which is simply for an award of fees for work performed by the Trustee's professionals. Whether the Trustee seeks to collect payment from the Plan or from the Debtor's estate has no bearing on the Court's core jurisdiction over the Trustee as Administrator, including a request for an award of fees and expenses in connection with his administration of the Plan.

### d. Jurisdiction over the Retention and Compensation of Professionals from Non-Estate Sources

The law is clear that the Trustee is required to seek the Court's authority to employ professionals to assist him in his duties as Plan Administrator. *See In re AB&C Group, Inc.,* 411 B.R. at 290, *In re Trans-Industries, Inc.*, 419 B.R. 21, 35-36 (Bankr. E.D. Mich. 2009) (finding that the Trustee "had authority under § 327(a), with the court's approval, to employ professionals to represent and assist him in administering the ERISA Plan."). Pursuant to Section 327 of the Code, the Trustee must obtain the Court's approval to employ attorneys, accountants and other professional persons "to represent or assist the trustee in carrying out the Trustee's duties under this Title." 11 U.S.C. § 327(a). As mentioned earlier, Section 704(a)(11) lists one of the

Trustee's duties "to perform the obligations required of the administrator" of the Plan.  11 U.S.C. § 704(a)(11).

Section 330 of the Bankruptcy Code governs compensation of the professionals the Trustee retains under Section 327.  The Court "may award to a trustee . . . reasonable compensation for . . . services rendered by the trustee [or] professional person[s]. . . and reimbursement for . . . expenses."  11 U.S.C. §§ 330(a)(1)(A) and (B). *See also* 11 U.S.C. § 331 (stating that the Trustee or professional person employed under Section 327 "may apply to the court" for compensation and reimbursement, and the court "may allow and disburse to such applicant such compensation or reimbursement.").  Section 330(a)(3) provides that in determining the amount of such "reasonable compensation," the Court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including . . . whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C).

The fact that the source of the funds available for payment of any award under this section may come from the Plan, which is a non-estate asset, is not central to the determination of the Court's jurisdiction to award fees for these services.  The court's analysis of the intersection between Sections 704(a)(11) and 330(a)(3)(C) of the Code in *In re Trans-Industries, Inc.* is on point:

> A Chapter 7 trustee's performance of his duty to administer an ERISA plan under § 704(a)(11) is "beneficial toward the completion of" the bankruptcy case, within the meaning of § 330(a)(3)(C), because the case cannot be "completed" without such performance. Similarly, a trustee's performance of this duty is also "necessary to the administration of" the bankruptcy case, within the meaning of § 330(a)(3)(C), because "administration of" the "case" includes the trustee's performance of all of his duties under

25

§ 704(a). In this sense, the phrase "administration of" the "case" as used in § 330(a)(3)(C) is broader than the phrase "administration of the estate," as the latter phrase is used in 28 U.S.C. § 157(b)(2)(A). . . . [T]he latter statute lists as one of the examples of "core" proceedings, "matters concerning the administration of the estate."

*In re Trans-Industries, Inc.*, 419 B.R. at 38.

The Court agrees with this analysis. Further, § 330(a)(4)(A)(ii) states that the Court "shall not allow compensation for . . . services that were not . . . necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii)(II). This Court finds that the retention and fee applications are a necessary component of the Trustee's administration of the Plan and are "necessary to the administration of the case." Therefore, the application for compensation is a core matter. Whether the Trustee may use the Plan funds to pay this award will depend upon whether the services performed are compensable under the relevant ERISA statutes and the Plan documents. Any order awarding fees would contain no determination of whether Plan funds could be used to satisfy the award. However, any order would direct the Trustee to first seek to satisfy the award from Plan funds. This comports with the Trustee's intent, who has indicated that he anticipates using the Forfeiture Fund or Plan participants' funds, to pay any award first. This procedure would also ameliorate some of the concerns raised by DOL regarding the complexities of seeking payment of any award from Plan assets. There would be no need for further motion practice by the Trustee in order to seek payment from the Plan. At least one court agrees that this is the correct procedure to follow. *See In re Trans-Industries, Inc.*, at 38 (stating that "normally, the Court should require that the cost of the Chapter 7 trustee's administering the ERISA plan be paid for with the plan's assets rather than bankruptcy estate assets.").

Turning to the applications as filed, the request for fees for the Trustee's professionals does not comply with the relevant Bankruptcy Rules or E.D.N.Y. Local Rules as the request was

not served properly.  Therefore, the request is denied without prejudice to renew upon proper application.

### d. Trustee's request for Authorization to Take Actions it Deems Appropriate to Administer the Plan

While the Bankruptcy Court has jurisdiction over the Trustee in connection with his actions as Administrator, in exercising this jurisdiction the Court can only grant relief authorized by the Bankruptcy Code.  The Bankruptcy Code only requires that orders be obtained prior to certain actions applicable to all trustees.  Those include retaining professionals and paying professionals.  This Court is subject to the case or controversy restrictions which limit Article III judges as well.  *NSCO,* 417 B.R. at 176.  At this point, there is no case or controversy before the Court requiring entry of an order authorizing the Trustee to take unspecified actions in the future in connection with termination of the Plan.  Any order approving the Trustee's actions in general in administering the case must wait until the end of the case, as the Code requires the Court to review the Trustee's compliance with § 704(a) before a case can be closed.  *See NCSO,* 417 B.R. at 181–182.  A case cannot be closed until "the estate is fully administered and the court has discharged the trustee."  11 U.S.C. § 350(a).  Discharge of a Trustee is "recognition, based on the facts put before the Court in a trustee's final report and final accounting that the case has been fully administered."  *Id.* at 181 (*citing* 11 U.S.C. § 704(a)(9) ("The trustee shall . . . make a final report and file a final account of the administration of the estate with the court and the United States Trustee.")).  In order to discharge the Trustee, the court must determine that there are no further obligations for the Trustee to fulfill. This request is premature as the Bankruptcy Code has no mechanism by which the Trustee may obtain an order approving future unspecified

actions to be taken as Administrator.  As such, the Court will not comment on the effect of such final report on the Trustee's obligations under ERISA.

### E.  Trustee's request for Compensation

With respect to the Trustee's request for compensation for services rendered as Administrator on an interim basis, this request is denied as it is premature.  Bankruptcy Code § 326 limits the amount of compensation awarded to chapter 7 trustees under § 330 based on a formula tied to disbursement of moneys in the Chapter 7 case.  Section 326 states that the compensation is payable "after the trustee renders such services," and the Court is not in a position at this point in the Debtors' cases to rule on this request.  It is undisputed that the Trustee neither collects nor disburses estate funds when he administers the Plan. The issue of whether the Trustee, as opposed to professionals retained by the Trustee, is entitled to compensation under § 330 or whether his only source of compensation would be the Plan funds is not yet properly before the Court.

### Conclusion

For the reasons set forth above, the Trustee's request for entry of an order authorizing him to terminate the Plan and retain professionals to assist him with his duties as Administrator is granted.  The request to authorize and award fees to the professionals is denied pending the filing of fee applications that comply with the Bankruptcy Code, Bankruptcy Rules and applicable Local Rules.  The Trustee's request for entry of an order awarding him interim compensation and authorizing the Trustee to take any actions the Trustee deems appropriate to bring the Plan into compliance with the ERISA statutes is also denied.  An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
     October 26, 2010
                                By: ***/s/ Robert E. Grossman***
                                      Robert E. Grossman
                                      United States Bankruptcy Judge