UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____x

In the Matter of                                        Chapter 7

THE ROBERT PLAN CORPORATION, et al          Case No. 8-08-74573-reg
                                                        Case No. 8-08-74575-reg

                              Debtors.                  (Substantively Consolidated)
_____x


### *Memorandum Decision*

Kenneth Kirschenbaum, the Chapter 7 Trustee ("Trustee") in the substantively

consolidated cases of The Robert Plan Corporation ("RPC") and The Robert Plan of New York

Corporation ("RPNY") (collectively, the "Debtors") seeks entry of an order awarding fees for

services rendered by the Trustee and his duly retained professionals in connection with the

Trustee's administration of an ERISA plan ("Plan") for the benefit of the Debtors' former

employees.  The Trustee filed an order scheduling a hearing on shortened notice to consider

applications by (i) the Trustee, for a second interim award of compensation for services rendered

as Plan administrator, (ii) Kirschenbaum & Kirschenbaum  ("K&K"), attorneys for the Trustee,

for a second interim award of compensation for services rendered as counsel to the Trustee while

acting as Plan administrator, (iii) David J. Witz, AIF ("Witz"), pension consultant to the Trustee,

for a final allowance of compensation for services rendered to the Trustee, and (iv) Travis L.

Whitfield, CPA, PLLC ("Whitfield"), independent auditor to the Trustee, for a final allowance of

compensation (collectively, the "Applications").   The Trustee declares he is ready to terminate

the Plan after fully administering it, and intends to use funds remaining in the Plan, which are not

property of the Debtors' estate, to pay fees and commissions awarded pursuant to the

Applications.  Because there are not sufficient funds in the Plan account to pay the contemplated awards to all professionals the Trustee has disclosed his intent to apply funds of the bankruptcy estate to make up the difference.

The U.S. Department of Labor ("DOL") objects to the Applications on various grounds. DOL asserts that this Court may award fees so long as those fees are paid solely from property of the Debtors' estate.  However, DOL argues that this Court lacks jurisdiction to award any fees that will be satisfied from Plan assets.   DOL alleges that this Court previously recognized in a written decision that it lacks jurisdiction to award fees from Plan assets and is restricted to awarding compensation under the Bankruptcy Code, and then only from funds constituting property of the Debtors' bankruptcy estate.  DOL concludes therefore that any award of fees or compensation by this Court where Plan assets may be used to pay all or part of such award is not binding on DOL or any other entity. DOL also has specific objections to the Applications, and seeks reductions as to each request except for the Witz application.

One of the flaws in DOL's argument is that it is premised on a misunderstanding of the Court's previous decision.  In *In re The Robert Plan Corp*., 439 B.R. 29 (Bankr. E.D.N.Y. 2010), this Court unambiguously concluded that it maintains core jurisdiction to authorize the Trustee to retain professionals to assist the Trustee in performing his duties under Bankruptcy Code § 704(a)(11). The source of the Trustee's obligation to act as Plan administrator is found in the Bankruptcy Code.  The fact that the Plan assets administered by the Trustee are not property of the Debtors' estate has no bearing on the Court's jurisdiction over the Trustee when acting as the Plan administrator.  The Court also ruled that it has core jurisdiction to award fees to the Trustee and his duly retained professionals in connection with the Trustee's acts as Plan administrator. Whether the payments are made from the Plan assets or Bankruptcy estate assets do not in any

way alter the legal analysis supporting the Court's ruling, a ruling that is now the law of the case. Any reference to the requirements applicable to compensation under the ERISA statutes was not meant to limit the Bankruptcy Court's jurisdiction to award fees to a Trustee, whether from Plan assets or assets of the Bankruptcy estate. Furthermore, Bankruptcy Code § § 326 and 330, as applicable when determining the amount of fees to award to the Trustee and his professionals, do not conflict with ERISA rules governing compensation of a Trustee as Plan administrator. ERISA has applicable regulations regarding reasonable and appropriate compensation for the Trustee and his professionals, but there is no ERISA statute that requires a Chapter 7 trustee or any trustee to seek a court's approval prior to the taking of fees. This Court's prior ruling makes clear however, that a Chapter 7 Trustee must seek court approval of his compensation.   Any such approval will only be granted after a hearing on notice to all parties  required under Fed. R. Bankr. P. 2002(a)(6), and upon a finding that the compensation sought complies with the Bankruptcy Code, which in turn requires a finding that the amount awarded is reasonable.  This procedure harmonizes with the applicable ERISA laws regarding compensation of a Plan administrator and his professionals.  Congress could have exempted a Chapter 7 trustee from these requirements when it enacted Bankruptcy Code § 704(a)(11), but it chose not to do so. Therefore, it is clear to this Court that (i) it has jurisdiction to award fees to the Trustee and his professionals, and (ii) there is no ERISA statute that conflicts with the requirement under the Bankruptcy Code that the Trustee and his professionals seek Bankruptcy Court approval of their fees.

### *Procedural History*

On August 25, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On January

19, 2010, the Debtors' cases were converted to cases under Chapter 7 of the Bankruptcy Code. The Trustee was duly appointed and qualified as acting trustee for both cases. By order entered on September 9, 2010, the Debtors' cases were substantively consolidated. On November 9, 2011, the Trustee filed the Applications. On November 10, 2011, the Court entered an order scheduling a hearing on shortened notice to consider the Applications. On December 7, 2011, DOL filed an objection to the Applications. On December 13, 2011, the Trustee filed a Reply. Hearings were held before the Court on December 14, 2011 and February 2, 2012. Thereafter, the matter was marked submitted.

### *Facts*

The Plan is sponsored by RPC for the benefit of its employees and is a defined contribution plan governed by the terms of ERISA. Section 19.05 of the Plan provides as follows:

> **Costs of Administration**. Unless some or all are paid by the Employer, all reasonable costs and expenses (including legal, accounting, and employee communications fees) incurred by the Administrator and the Trustee in administering the Plan and Trust may be paid from the forfeitures (if any) resulting under Section 11.08, or from the remaining Trust Fund. All such costs and expenses paid from the Trust Fund shall, unless allocable to the Accounts of particular Participants, be charged against the Accounts of all Participants on a pro rata basis or in such other reasonable manner as may be directed by the Employer and accepted by the Trustee.

Prior to the Petition Date, RPC was the Plan administrator. Upon conversion of the Debtors' cases and appointment of the Trustee, the Trustee was required, under Bankruptcy Code § 704(a)(11), to continue to perform the obligations required of the Plan administrator. By application dated May 6, 2010, the Trustee sought Court authorization to act as Plan administrator at an hourly rate of $500.00, and sought Court authorization to retain the services of Witz as pension consultant, K&K as legal counsel to the Trustee as Plan administrator, and Whitfield as

independent auditor ("First Application"). By supplemental application filed on June 10, 2010, the Trustee sought authorization to pay the above-named entities and individuals up to certain specified amounts subject to his discretion from the Plan funds ("Second Application"). On August 6, 2010, the Trustee filed a supplemental affirmation in support of the Second Application, wherein the Trustee sought authorization to take whatever action the Trustee deems appropriate to bring the Plan into compliance with applicable rules and regulations, and to terminate the Plan ("Second Amended Application"). In order to fund the costs associated with bringing the Plan into compliance with applicable rules and regulations, restore funds to certain participants' accounts, file the necessary tax returns and to proceed to terminate the Plan, the Trustee directed that each Plan participant's account be surcharged three percent, which funds have been placed into an account called a "Pguy Account." Pursuant to the Second Amended Application, the Trustee sought authorization to pay himself $40,940.00 on an interim basis as compensation for services rendered as Plan administrator. DOL objected to the Trustee's request for Court authorization to pay the Trustee and to retain and pay professionals on the basis that this Court lacks jurisdiction over the Trustee's actions when he acts as Plan administrator. In a memorandum decision dated October 26, 2010, this Court held that the Trustee, when acting as Plan administrator pursuant to Bankruptcy Code § 704(a)(11), is subject to the Bankruptcy Court's core jurisdiction. *In re The Robert Plan Corp.*, 439 B.R. 29 (Bankr. E.D.N.Y. 2010). This Court further ruled that it has jurisdiction over any request by the Trustee to retain and pay professionals to assist the Trustee in carrying out his duties as Plan administrator. *Id*. at 45. As a creature of the Bankruptcy Code, the Trustee exercises a core function when administering the Plan assets, and the fact that the Plan assets were not assets of the Debtor's bankruptcy estate did not place the Trustee's actions out of the reach of this Court's jurisdiction. The Court did not

rule on whether the use of Plan funds to pay fees awarded by the Bankruptcy Court complied with the relevant ERISA statutes, but directed the Trustee and his professionals to seek to satisfy any award from Plan funds first. *Id*. at 45 - 46. The Court declined to rule on the Trustee's request for authorization to take unspecified actions in the future in connection with termination of the Plan, finding that the request was premature. *Id.* at 46. The Court also declined to rule on the Trustee's request for interim compensation for his services rendered as Plan administrator on the same grounds. However, the Court did reserve for a future date a determination of whether the Trustee could be paid pursuant to the formula set forth in Bankruptcy Code § 326. Finally, the Court denied without prejudice the fee applications for K&K and the other professionals for improper service. No appeal was taken from the order denying in part and granting in part the First Application, the Second Application and the Second Amended Application.

On January 5, 2011, applications for interim compensation ("First Interim Fee Applications") were filed by the Trustee, K&K, Witz and Whitfield. The Trustee's interim application covered the period of time from the date the Trustee was appointed to November 4, 2010. K&K's application covered the period of time from the date K&K was retained by the Trustee to November 4, 2010. Witz's application covered the period of time from the date Witz was retained through December 15, 2010. Whitfield's application covered the period of time from the date Whitfield was retained through December 14, 2010. On January 25, 2011, DOL filed responsive papers objecting to the applications of K&K and the Trustee, and indicating that DOL had reached an agreement with Witz and Whitfield regarding their interim requests. On January 28, 2011, the Trustee filed a reply to DOL's objections. At the hearing on February 7, 2011, the Court awarded $45,300.00 plus expenses in the amount of $740.42 to the Trustee, which represented 80% of the amount sought by the Trustee. The remainder was subject to a

holdback pending a final fee application.  The amount of this interim award was based on an hourly rate of $500.00 per hour, and not on the calculations set forth in Bankruptcy Code § 326. The Court also awarded $43,389.00 to K&K, representing 80% of the total amount requested, $39,750.00 to Whitfield, representing 75% of the total amount requested, and $29,590.00 plus reimbursement of expenses in the sum of $3,755.00 to Witz, representing 80% of the total amount requested.   No appeals were taken from the orders granting the First Interim Fee Applications.  Pursuant to orders entered on March 1, 2011, the Court granted such awards but, consistent with the prior memorandum decision in this case, refrained from specifying whether the awards were to be paid from Plan assets, assets of the Debtors' estate, or some combination of both.  The Trustee paid himself the sum of $34,000.00 as interim compensation and $740.42 as reimbursement of expenses from the Plan funds in the Pguy Account and the sum of $11,300.00 in interim compensation from Estate funds.  K&K's award was paid from Plan funds in the Pguy Account, as were the interim awards to Witz and Whitfield.

The Trustee has distributed i) funds totaling $7,533,894.27 to Plan participants either as rollovers to different accounts or as direct payments, ii) $1,725,147.70 to third party custodians where IRA accounts were set up for those Plan participants who could not be located or who have not responded to the notice of termination, iii) $40,580.27 from the forfeiture account, and iv) $116,587.45 in disbursements from the Pguy Account.  The Trustee is in a position to file a final tax return on behalf of the Plan, and as of the date of the Applications, approximately $144,000.00 remained in the Pguy Account.  An additional $2,376.00 representing an insurance premium refund on a cancelled fiduciary policy was to be deposited into the Pguy Account prior to the hearing scheduled for the Applications.  Therefore, the balance available for distribution from the Plan aggregated $146,382.01 as of the date of the hearings on the Applications.

The Trustee seeks a second award of interim award of compensation in the amount of $132,378.24 for work performed solely in connection with carrying out the Trustee's duties set forth in Bankruptcy Code §704(a)(11). K&K seeks a second award of interim compensation in the amount of $49,408.75. Witz and Whitfield, the other professionals retained by the Trustee to assist him with winding up the Plan, seek final awards for their work performed. Each of the professionals have filed applications which include a recitation of work performed and copies of time sheets for the Court's review. Each seek awards based solely on work performed in connection with assisting the Trustee in carrying out his duties set forth in Bankruptcy Code § 704(a)(11). If the compensation is granted as requested, there are insufficient funds in the Pguy Account to pay these amounts in full. There are sufficient funds in the Debtors' estate to make up any shortfall.

### *Discussion*

DOL objects to the Applications on several grounds. DOL argues that because this Court held in its prior Memorandum Decision that any order awarding fees would contain no determination of whether Plan assets could be used to satisfy the award, the issue of whether funds held in the Pguy Account may be used to satisfy any award is not before the Court. Therefore, DOL does not comment on whether the Trustee and his professionals have complied with the requirements imposed by ERISA on a Plan fiduciary, such as the Trustee, and his professionals. DOL does note that the Trustee may not be compensated from Plan assets to the extent he performs "settlor functions" which are expenses incurred for the benefit of the employer. U.S. Dep't of Labor Field Assistance Bulletin 2002-2 (Nov. 4, 2002), http://wwww.dol.gov/ebsa/regs/fab_2002-2.html ("expenses incurred in connection with the performance of settlor functions would not be reasonable plan expenses as they would be

incurred for the benefit of the employer."). While DOL does not specifically identify which of the Trustee's activities listed in the Application are non-compensable as settlor duties, it appears that settlor functions are as follows:

Decisions and activities related to the management of the [ERISA] plan, including the establishment, design and termination of the plan, are generally considered 'settlor expenses,' and may not be paid out of [ERISA plan funds]. Decisions and activities related to the management of the plan, including the establishment, design and termination of the plan, are generally considered 'settlor' functions . . . properly paid by the bankruptcy estate pursuant to 11 U.S.C. § 503(b). *See In re Merry-Go-Round Enterprises, Inc*., 180 F.3d 149 (4th Cir. 1999).

*In re Carolina Premier Medical Group, P.A.,* No. 00-82322C-7D (Bankr. M.D.N.C. Mar. 31, 2003). DOL also takes the position that the Trustee as a fiduciary may not "set" his own fees pursuant to 29 U.S.C. § 1106(b)(1). Accordingly, the Trustee would have to seek an exemption from DOL, have his fees approved by another independent fiduciary, or enter into a settlement with the Secretary of Labor. DOL also asserts that to the extent any amounts are sought and not awarded under the Bankruptcy Code, they would not be payable under 29 U.S.C. § 1104(a), which requires that ERISA plan assets be used exclusively for providing benefits and "defraying reasonable expenses for administering the plan."

According to DOL, a fiduciary such as the Trustee has the initial burden of demonstrating that the amounts paid are reasonable compensation, and cites to *Marshall v. Snyder,* 572 F.2d 894, 900 (2d Cir. 1978) in support. DOL then seems to argue that this Court should adopt a standard that would define reasonableness as what DOL claims is the customary rate for Plan services performed by a non-bankruptcy ERISA plan administrator. DOL proceeds to conclude that the Trustee's hourly rate, based on the amount of commissions sought and the time spent on administering the Plan, greatly exceeds this rate. However, DOL maintains that even if this Court did adopt this standard, they would not be bound by any decision of the Court

because this Court lacks jurisdiction to rule on any fee request where ERISA statutes would apply.

DOL argues that this Court is restricted solely to determining what compensation is payable under the Bankruptcy Code, and only to the extent such compensation is paid from property of the Debtor's estate.  If DOL's argument is followed to its logical conclusion, DOL would be free to disregard any order of this Court awarding fees if such fees are paid from Plan assets and to seek recovery of any such fees from the Trustee or his professionals in a Court of their choice.

DOL also objects to the Applications under the applicable Bankruptcy Code sections except for the application of Whitfield.  The Court shall consider DOL's general comments first, and then analyze the Applications separately.

*Analysis*

**1.  The Bankruptcy Court's Jurisdiction**

By arguing that DOL has the right to bring a proceeding in District Court to seek the recovery of fees awarded by this Court to the Trustee and his professionals, DOL challenges this Court's jurisdiction to award fees when those fees are paid from Plan assets.   As this Court previously held in *In re The Robert Plan Corp*., 439 B.R. at 39, Bankruptcy Code § 704 sets forth the specific obligations of the chapter 7 trustee, which include the obligation "to perform the obligations required of the [ERISA] plan administrator."  11 U.S.C. § 704(a)(11).  The Trustee is also charged with "following the relevant ERISA statutes applicable to plan administrators and adhering to the obligations imposed upon the plan administrator under the plan documents.  The standards for Plan termination are found in the ERISA rules and

regulations . . . ." *Id.*  Because the Trustee is required under the Bankruptcy Code to act as Plan

administrator, this Court previously ruled that, notwithstanding the obligation to comply with

applicable ERISA rules and statutes, the Bankruptcy Court has core jurisdiction over the

Trustee's actions.  *Id*. at  43.  This Court also ruled that the Bankruptcy Court has core

jurisdiction over the retention and compensation of the Trustee and his professionals while

performing the Trustee's duties pursuant to Bankruptcy Code § 704(a)(11).  *Id.* at 44 - 45.

The fact that the Trustee may determine to seek payment of an award of compensation

from the Pguy Account is not germane to a finding that this Court has jurisdiction to enter an

order awarding fees to the Trustee or his professionals.  *Id*.  DOL chose not to appeal this

decision, and therefore the findings contained therein remain the law of the case. *See Arizona v.*

*California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) ("When a court decides

upon a rule of law, that decision should continue to govern the same issues in subsequent stages

of the same case.").  The doctrine of "law of the case" has been described as follows:

> 'Law of the case rules have developed to maintain consistency and avoid
> reconsideration of matters once decided during the course of a single continuing
> lawsuit.  These rules do not involve preclusion by final judgment; instead, they
> regulate judicial affairs before final judgment.'

*In re PCH Associates,* 949 F.2d 585, 592 (2d Cir. 1991) (quoting 18 C. Wright, A. Miller & E. Cooper,

Federal Practice and Procedure § 4478, at 788 (1980)).

Although the Court held in its previous memorandum decision that any order awarding

fees would contain no determination of whether Plan assets could be used to pay such award, the

Court was very clear that it had jurisdiction to make such award.  Any reference as to whether

certain services are compensable under the relevant ERISA statutes should not be interpreted to

undermine in any way this Court's obligation to consider the Applications and its authority to award fees to the Trustee when acting as Plan administrator.

While DOL acknowledges the Court's previous rulings, DOL appearing in opposition to the Applications asserted that if DOL disagrees with the Court's awards of compensation, DOL may disregard the Order of this Court and challenge any fees taken by the Trustee and/or his professionals from the Pguy Account in the District Court.  DOL appeared in these cases, was served with the Applications and appeared at the hearings.  The Court has considered all of the issues raised by DOL in its papers. Whether the fees are drawn from the Pguy Account or from assets of the Debtors' estate, this Court has the jurisdiction to consider and grant the Applications.

### 2.   The Trustee

An issue not determined in the prior written decision is whether, under the facts of this case, Bankruptcy Code § 326(a) is the appropriate statute to determine the Trustee's application for compensation.   The Trustee seeks compensation pursuant to Bankruptcy Code §§ 330, 331 and 326, and his professionals seek compensation pursuant to Bankruptcy Code §§ 330 and 331. If § 326(a) is the applicable statute governing the Trustee's compensation for performing the duties of Plan administrator, then the Court must determine whether ERISA laws  apply to any award of fees to the Trustee.  If there are applicable ERISA statutes to consider when awarding compensation pursuant to the Trustee's application, the Court must apply the rules of statutory construction to determine whether there is a conflict between applicable Bankruptcy law and ERISA law.  After first determining whether in fact there are conflicting statutory provisions, the Court shall then consider each application separately.

### a.    Whether § 326(a) Determines the Trustee's Compensation

The Trustee received $45,300.00 plus expenses in the amount of $740.42 pursuant to the First Interim Fee Application, and now seeks a total of $132,378.24 as a second interim award. While the First Interim Fee Application sought an award calculated on an hourly fee basis, the Trustee now seeks an award based on the formula set forth in Bankruptcy Code § 326(a). According to the Trustee, he will have disbursed a total of $9,560,215.70 in Plan assets.  If the Trustee's maximum allowable compensation for services rendered is calculated using this as a base amount, the cap on the Trustee's commissions would be $310,056.47.  Deducting the amount previously awarded to the Trustee from the maximum allowable compensation under § 326(a), the maximum allowable compensation which the Trustee may be awarded for performing his § 704(a)(11) duties would amount to $264,756.47.  The Trustee has reduced this amount, and seeks $132,378.24 as a result.

The Trustee's calculations are based on the formula set forth in Bankruptcy Code § 326(a).  Section 326(a) of the Bankruptcy Code provides:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a). Prior to the enactment of the Bankruptcy Abuse and Consumer Protection Act ("BAPCPA"), Chapter 7 trustees were required to justify their compensation under this section as well as Bankruptcy Code § 330(a)(3).  Bankruptcy Code § 330(a)(3) directed the Bankruptcy Court to consider certain factors in addition to the formula set forth in § 326(a).  The factors included the time spent on such services, the rates charged for such services, whether the

services were necessary to the administration of, or beneficial to the case, and whether the compensation was reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Pursuant to BAPCPA, newly-added § 330(a)(7) provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." 11 U.S.C. § 330(a)(7). In cases filed post-BAPCPA, "[t]here is a presumption that the fee award will match the percentage calculation under § 326, though a trustee is not entitled to the statutory maximum as a matter of right." *In re Siskin*, No. 11 Civ. 9468 (NRB), 2012 WL 2367043 *5 (S.D.N.Y. Jun. 20, 2012) (citing 6 Collier on Bankruptcy ¶ 721.03 (16th ed. 2010)). The general consensus among the courts is that Chapter 7 trustee fees are subject to judicial review for "reasonableness" which is a guiding principle expressly stated in § 330(a)(7). See *In re Luedtke*, No. 07-70924, 2011 WL 806003 * 3 (Bankr. C.D. Ill. Feb. 28, 2011) ("Courts . . . have consistently held that Chapter 7 trustee compensation remains subject to court review for reasonableness. See, e.g., *In re Clemens,* 349 B.R. 725 (Bankr. D. Utah 2006); *In re Ward*, 366 B.R. 470 (Bankr. W.D. Pa. 2007); *In re Mack Properties, Inc.,* 381 B.R. 793 (Bankr. M.D.Fla. 2007); *In re McKinney*, 383 B.R. 490 (Bankr N.D. Cal. 2008); *In re Phillips,* 392 B.R. 378 (Bankr. N.D. Ill. 2008); *In re Healy,* 440 B.R. 834 (Bankr. D. Idaho 2010); *In re B & B Autotransfusion Services, Inc.,* 443 B.R. 543, 2011 WL 144907 (Bankr. D. Idaho Jan. 18, 2011)"). Despite having reached the consensus that the commissions must still be found to be reasonable, courts do not agree on what "reasonable" means. *Id*. at *4. As the Bankruptcy Court for the District of Ohio recently held in *In re B & B Autotransfusion Services, Inc*:

> Some courts have continued to rely, at least in part, on the so-called *Johnson* factors which have provided guidance in awarding professional fees since 1974.  See *Clemens*, 349 B.R. at 732, citing *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) (*Johnson* factors plus additional updated factors may be considered);  *Phillips*, 392 B.R. at 385 (*Johnson* factors still apply with the exception of those specifically enumerated in § 330(a)(3), which no longer apply).  Other courts have held that time records, the statutory commission formula of § 326, and "all other relevant factors" should be considered in determining reasonable compensation for Chapter 7 trustees.  *See McKinney*, 383 B.R. at 493

2011 WL 144907 at *4.

The Trustee bases his request on the formula set forth in Bankruptcy Code § 326(a), and has reduced the amount based on this formula by approximately one-half.  According to the Trustee, his request is reasonable, provides proper compensation for the Trustee's services and complies with the applicable Bankruptcy Code requirements.  If this case involved the Trustee's sale of estate assets, and the Trustee's application was based on the moneys disbursed from the sale to creditors, and the Trustee's request was approximately half of the sum derived under the formula set forth in § 326(a), it is likely that the Court would conclude that the Trustee's request was reasonable.  However, this case presents a unique issue.  In this case, the Plan assets which were distributed are not property of the Debtors' estate, and the Plan participants who received the distributions are not creditors of the Debtors.  Therefore, the Court must determine whether § 326(a) applies at all when fixing the Trustee's compensation, whether the formula is the beginning and ending point of the inquiry, and if not, whether the Court must consider other factors in order to satisfy the requirements set forth in § 326(a). The Court shall turn to the language of the statute first.

**(i)       Moneys Disbursed**

The formula set forth in § 326(a) is based "upon all *moneys disbursed or turned over in the case* by the trustee to *parties in interest*, excluding the debtor, but including holders of secured claims."  11 U.S.C. § 326(a) (italics added).  Courts have construed this section pursuant to the plain language of the statute.  *In re Circle Investors, Inc.,* No. 02-39553, 2008 WL 910062 (Bankr. S.D. Tex. Apr. 3, 2008). For example, the word "moneys" has been interpreted literally, and courts usually exclude the value of credit bids or the value of property other than moneys transferred, in the calculation of the trustee's commissions. *United States Trustee v. Messer (In re Pink Cadillac Associates*), Nos. 96 CIV. 457 (LLS), 95-B-4243 (BRL), 1997 WL 164282 *3 (S.D.N.Y. Apr. 8, 1997) (citing, *inter alia*, *Kandel v. Alexander Leasing Corp.,* 107 B.R. 548, 551 (N.D. Ohio 1988), *aff'd*, 889 F.2d 1087 (6th Cir. 1989)).  The statute plainly does not require that disbursed funds be "property of the estate."  Some courts interpreting this language agree and conclude that "[t]he base is not limited to distributions of property of the estate, as a trustee may disburse monies to parties in interest, within the meaning of Section 326(a) without in the process having actually distributed property of the estate." *In re North American Oil & Gas, Inc.,* 130 B.R. 473, 478 (Bankr. W.D. Tex. 1990)  (other citations omitted).  For example, where a trustee liquidates property in which the debtor and a third party hold an interest, the trustee is fulfilling his or her obligation to liquidate assets for the benefit of creditors, and make a distribution to the creditors of the debtor.  11 U.S.C. § 363(h), (j).[1]  Whatever moneys the trustee disburses, whether estate property or not, is included in the formula.  The fact that a non-debtor is receiving non-estate property as a result of the sale of the jointly owned asset does not change

---

[1] 11 U.S.C. § 363(j) provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.
> 11 U.S.C. § 363(j).

the application of this statute**.**  The Court agrees that the statute applies equally in this case, where the Trustee is obligated under the Bankruptcy Code to act as Plan administrator.  Central among the Trustee's obligations is to distribute Plan assets to the proper beneficiaries.  This obligation entails disbursing non-estate funds, which funds fall within the term "moneys" as set forth in § 326(a), regardless of whether the moneys are property of the bankruptcy estate.

### (ii)    **Parties in Interest**

The second issue for the Court to consider is whether the Trustee's distribution of Plan assets to the Plan beneficiaries is being made to "parties in interest." While the Code does not define this term, courts have interpreted it broadly to mean "'any party who has an actual pecuniary interest in the case, as well as to those parties who have a practical stake in the outcome of the case, or to those parties who will be impacted in any significant way by a decision made in the case.' *In re Citi-Toledo Partners II,* 254 B.R. at 163 (citing *In re Cowan,* 235 B.R. 912, 915 (Bankr. W.D. Mo. 1999) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1041-44 (3d Cir. 1985); *Kapp v. Naturelle, I*nc., 611 F.2d 703, 706 (8th Cir. 1979); *In re Johns-Manville Corp.*, 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984))."   *In re Circle Investors, Inc.,* 2008 WL 910062 at *4.  The Plan beneficiaries have an interest in the Debtors' case and in the decisions made by this Court regarding (i) the compensation requested by the Trustee and his professionals, and (ii) whether to issue an order approving the Trustee's final report at the conclusion of this case.  Furthermore, to the extent the Court determines whether the Trustee and his professionals are to be paid from estate assets versus Plan assets, and fixes the compensation for the Trustee and his professionals, the Plan beneficiaries will be affected.  Therefore, the Court concludes that the Plan beneficiaries, as recipients of Plan assets, are "parties in interest." Having found that § 326(a) applies when fixing the Trustee's compensation, the Court now turns

to whether this section of the Bankruptcy Code conflicts with the ERISA statutes. If there is an irreconcilable conflict between statutes, the Court is charged with finding which statute prevails.

### b. Whether ERISA Laws Apply, and if so Whether They Conflict With the Bankruptcy Code

Before examining the ERISA statutes, a review of the rules of statutory construction is in order. First, statutory analysis begins with the text of the statute and its plain meaning, if it has one. *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 337-38 (2d Cir. 2006); s*ee Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). If a statute is ambiguous, courts must resort to the canons of statutory construction to help resolve the ambiguity. *Id.* "[W]hen the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history." *United States v. Dauray,* 215 F.3d 257, 264 (2d Cir.2000) (other citations omitted).

Second, courts must give effect to every word of a statute where possible: the sole exception to this rule of construction applies where a statute groups words together in a list, in which case words should be given related meaning. *United States v. Bernier*, 954 F.2d 818 (2d Cir. 1992); *See  Bowsher v. Merck & Co.*, 460 U.S. 824, 833, 103 S.Ct. 1587, 1593, 75 L.Ed.2d 580 (1983) (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 102 S.Ct. 3014, 3027 (1982)). Statutory construction 'is a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." *Aircraft Mechanics Fraternal Ass'n v. Atlantic Coast Airlines, Inc*., 55 F.3d 90, 94 (2d Cir.1995).

Third, " 'when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *F.C.C. v. NextWave Personal Commc'ns Inc.,* 537 U.S. 293, 304, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003)

(other citations omitted). Where two statutes conflict, a court must "give effect to both statutes to the extent that they are not mutually repugnant." *Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Exp. and Stations Emp., AFL-CIO v. REA Exp., Inc.,* 523 F.2d at 169.  To the extent that two statutes contain language giving rise to irreconcilable conflicts, each of which by its terms applies to the facts before the court, the statute which is the more recent of the two prevails. *Watt v. Alaska*, 101 S. Ct. 1673 (1981).  Despite this maxim, "[i]t is a fundamental tenet of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum, regardless of the priority of the enactment."  *In re Petrusch*, 14 B.R. 825, 829 (N.D.N.Y. 1981), *aff'd*, 667 F.2d 297 (2d Cir. 1981) (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540  (1976) and *Morton v. Mancari*, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974)).   This rule is based on the presumption that when a legislature focuses on the details of a subject and enacts a subsequent statute in general terms treating the subject in a general manner, not expressly contradicting the original act, that prior statute shall not be considered to affect the more particular provisions in a later law. *Radzanower v. Touche Ross & Co.,* 426 U.S. at 153, 96 S.Ct. at 1993 (other citations omitted).

Although there is scant law regarding conflicts specifically between the Bankruptcy Code and ERISA, the Bankruptcy Court for the District of Massachusetts has considered this issue in *In re NSCO, Inc.*, 427 B.R. 165 (Bankr. D. Mass. 2010). In a Chapter 7 case where the case trustee had administered an ERISA plan formerly administered by the debtor prepetition, the Bankruptcy Court for the District of Massachusetts was called on to determine whether the Bankruptcy Court had jurisdiction to enter an order terminating the ERISA plan, finding that the Chapter 7 trustee satisfied his obligations with respect to the ERISA plan, and barring any claims

related to his administration of the ERISA plan. The trustee's request came before the debtor's

estate was fully administered, but after the trustee had fully administered the ERISA plan.  First

the *NSCO* Court found that the Chapter 7 trustee's duties originated in Bankruptcy Code  §

704(a), not under ERISA:

> When Congress amended the Bankruptcy Code in 2005, that it chose to
> place the statutory obligation solely in the Bankruptcy Code, rather than in
> ERISA or in both statutes, is some indication that Congress intended ERISA
> responsibilities to fit within the framework of the Bankruptcy Code, not the other
> way around. If the Court were convinced that the two statutes are irreconcilable, it
> is cognizant of the maxim that where two statutes conflict 'the latter in time
> prevails over the former.  Congress passed the Bankruptcy Code in 1978; ERISA
> was enacted previously in 1974.'  Therefore the Code is controlling.  *In re
> DeWeese*, 47 B.R. 251, 256 (Bankr. N.C. 1985).

*In re NSCO, Inc*., 427 B.R. at 180, 181.

Having concluded that to the extent there was a conflict between the Bankruptcy Code

and an ERISA provision, the Bankruptcy Code would govern, the Court considered the Chapter

7 trustee's request.  The Bankruptcy Court determined that the Chapter 7 trustee was entitled to

be discharged once the trustee fully administered the debtor's case.  However, since the debtor's

case was not yet fully administered, the request was premature.  The Bankruptcy Court also

concluded that there was no requirement that the bankruptcy case be kept open for six years to

accommodate the ERISA statute of limitations applicable to ERISA plan fiduciaries.  If DOL

discovered a breach of fiduciary duty by the trustee after the case was closed, DOL had the right,

as would any other party, to seek to reopen the bankruptcy case to commence an action against

the trustee.  *Id*. at 181-182.

Before considering whether the Bankruptcy Code reigns supreme over ERISA in the

instant case, the Court must determine whether there is in fact a conflict between the relevant

Bankruptcy Code and ERISA provisions.  Bankruptcy Code § 330, which is entitled

"Compensation of officers," authorizes the Bankruptcy Court to award fees to a Chapter 7 trustee and his professionals only after notice and a hearing, and only to award "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person." 11 U.S.C. § 330(a)(1)(A). Subsection (a)(3) also sets forth a detailed list of factors the Bankruptcy Court is to take into consideration when determining the amount of fees to award to professional persons retained by a Chapter 7 trustee and other parties. As discussed above, BAPCPA amended the Bankruptcy Code to include § 330(a)(7), which specifically directs that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." The Bankruptcy Code sets forth in specific detail the procedure for awarding compensation and the factors to be taken into consideration by the Court when awarding compensation.

In contrast to the Bankruptcy Code, ERISA contains no requirement that an ERISA plan fiduciary such as the Trustee obtain court approval prior to receiving compensation for his or her services in administering the Plan. However, the Plan administrator is not entitled to compensation for performing the duties of the settlor, or Plan sponsor. In addition, the following ERISA statutes govern the Plan fiduciary's actions in this case. First, a fiduciary such as the Trustee or his professionals must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). *See L.I. Head Start Child Dev. Services, Inc. v. Frank,* 165 F. Supp.2d 367, 369 (E.D.N.Y. 2001) (ERISA permits a non-fiduciary such as a plan's attorney to be liable for knowingly participating in a fiduciary's breach of its duties). Second, under the "Exclusive

Benefit Rule," plan fiduciaries such as the Trustee are required to discharge their duties for the exclusive purpose of providing benefits to participants and "defraying the reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).  Third, 29 U.S.C. § 1106(a)(1)(C) prohibits the Trustee as plan fiduciary from entering into an agreement for the "furnishing of goods, services, or facilities between the plan and a party in interest."  Fourth, the Trustee as plan fiduciary shall not:

> (1) deal with the assets of the plan in his own interest or for his own account,
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interest of its participants or beneficiaries, or
> (3)  receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

 29 U.S.C. § 1106(b).

The prohibitions set forth above are subject to certain enumerated exceptions, pursuant to section 1108 of ERISA, which include an exception for the "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."  29 U.S.C. § 1108(b)(2). This exception does not require prior approval from DOL, a court, or any other agency or authority.  *Engelhart v. Consolidated Rail Corp*., No. CIV.A. 92 – 7056, 1996 WL 526726 * 12 (E.D. Pa. Sept. 18, 1996).   In addition, pursuant to 29 U.S.C. § 1108(c)(2), nothing contained in section 1106 of ERISA is to be construed to prohibit any fiduciary such as the Trustee from "receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the [P]lan [with certain restrictions not applicable to this case]."

The proper procedure for a party such as DOL or a Plan beneficiary to follow in the event they believe ERISA sections 1104 or 1106 have been violated is to commence a proceeding against the Trustee and/or his retained professionals.  The statute of limitations for such action would be the earlier of (1) six years from the date of the "last action which constituted a part of the breach or violation" or (2) three years after "the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113.

None of the above cited ERISA provisions specifically require a Plan fiduciary or professionals retained by a Plan fiduciary to obtain authorization from a court or any other agency or entity prior to taking fees from ERISA plan assets as compensation for their efforts. Notwithstanding the plain language of the Plan documents and these statutes, DOL asserts that prior approval is necessary in this case.  First, DOL claims that the Trustee is setting his own fees in violation of 29 U.S.C. § 1106(b)(1) and (2).  DOL argues that because the Trustee is attempting to set his own fees, he is required to either have his fees approved by another independent plan fiduciary, or enter into a settlement with the Secretary of Labor.  However, the fundamental flaw in DOL's argument is its assertion that the Trustee is setting the fees for the Trustee and his retained professionals.  The Trustee does not have the authority under the Bankruptcy Code to "set" his fees.   The Trustee is merely complying with the applicable Bankruptcy Code and Rules in making an application to the Court to approve compensation for himself and his retained professionals. In complying with the Bankruptcy Code, the Trustee subjects his application to full and complete scrutiny by the Court and all parties served with the application.  In fact, it is only because of this process that DOL has an opportunity to participate in determining what is in fact reasonable compensation for the Trustee before the Trustee takes any money for his services.

Second, DOL argues that under ERISA, the Trustee must establish that the amounts sought are reasonable prior to taking any fees.  Again, a careful analysis of DOL's argument shows that its argument is misleading at best.  An ERISA plan fiduciary such as the Trustee is only entitled to reasonable compensation for his work performed, but an ERISA plan fiduciary does not have the burden of establishing, prior to taking fees, that the amounts being sought are reasonable.  The case of *Marshall v. Snyder,* 572 F.2d 894 (2d Cir. 1978), which is cited by DOL, does not in fact support DOL's argument.  In *Marshall v. Snyder,* DOL commenced an action against present and former trustees of certain ERISA plan, alleging that the trustees were engaging in self- dealing in violation of the fiduciary duties imposed upon them by 29 U.S.C.  § 1104(a)(1)(A) and (B).  The defendants consented to entry of an order precluding them from using the assets of the ERISA plan funds for their own benefit, except for making certain payments for services rendered, with maximum amounts set forth in the consent order.  Thereafter, the District Court for the Eastern District of New York concluded, pursuant to a proceeding brought by DOL to remove the defendant trustees of the ERISA plans and to set aside certain transactions, that the " ' inherent conflict of interest and potential for self-dealing which result from the union officers' controlling both the Plans and RPI, which is the administrative agent of the Plans, coupled with the actual conduct of the defendants since the consent order, and when interpreted in the light of the serious charges of misappropriation of trust fund monies alleged in the complaint, require immediate and drastic action by the court in order to preserve from further dissipation the assets of the Plans for the benefit of their participants and beneficiaries.' "  *Id*. at  897 (citing *Marshall v. Snyder*, 430 F. Supp.1224, 1232 (E.D.N.Y. 1977).  The District Court also concluded that the payment of salaries to certain individuals was prohibited under 29 U.S.C. § 1106(a)(1)(C).

It was in this context that the Court of Appeals for the Second Circuit held on appeal that the administrative agent of the ERISA plans at issue had the burden of establishing that the

compensation these individuals received were reasonable, notwithstanding entry of the consent order.  *Id.* at 900.  As the Second Circuit pointed out in *Marshall v. Snyder,* the entry of a consent order, after alleging that parties subject to a fiduciary relationship have engaged in self-dealing, will not absolve those charged with those offenses*:*

> The argument [by the defendants] in essence appears to be that the consent order must be considered as setting a reasonable rate of compensation to [the defendants], and that since they were not paid at greater rates than those set forth in the consent order, and tendered the described amount of service to RPI, the Secretary could avoid the exceptions of Section 1108(b)(2) and (c)(3) only by showing that the amounts were unreasonable. There are many difficulties with the argument. The consent order did not set reasonable rates. It stated the amounts beyond which payments could not be made. The responsibility for paying reasonable compensation was the unequivocal fiduciary responsibility of the defendants. Also, it would be new law to find that in a self-dealing transaction and prohibited transactions involve self-dealing the party representing the beneficiaries of the fiduciary whose self-dealing transaction is challenged must prove the unfairness of the transaction. The settled law is that in such situations the burden of proof is always on the party to the self-dealing transaction to justify its fairness. <u>Nedd v</u>. <u>United Mine Workers of America</u>, 3rd Cir. 1977, 556 F.2d 190, 210-211; <u>cf. Pepper v. Litton,</u> 1939, 308 US 295, 306-307, 60 S.Ct. 238, 84 L.Ed.281; <u>Tomarkin v. Vitron Research Corp.,</u> 2nd Dept. 1960, 12 AD2d 496, 206 N.Y.S.2d 869;  3 Fletcher, Cyclopedia of the Law of Private Corporations (rev.perm.ed.1975) 362, 383.

572 F.2d at 900.

The *Marshall* case supports a finding that in general, a plan administrator and his professionals may take reasonable fees without prior authorization from DOL or a court of competent jurisdiction.  ERISA contains no obligation for a plan fiduciary to make out a case for the fees taken prior to taking them, and Section 1108(c)(3) of ERISA specifically permits the Trustee as Plan fiduciary to receive compensation for services rendered so long as they are reasonable.  In order to challenge fees taken for services rendered by a Plan fiduciary or his

retained professionals, a party must bring a proceeding, and that party has the burden of establishing a prohibited action has taken place in violation of the party's fiduciary obligations under applicable ERISA laws.  It is only after such steps are taken that the burden shifts to the party alleged of breaching his or her fiduciary duty to demonstrate that their actions were fair and no breach has occurred.

Based on the Court's plain reading of the applicable ERISA statutes and Bankruptcy statutes, and keeping in mind that the Court should give effect to both statutes if they are not completely at odds, the Court concludes that Bankruptcy Code § §326 and 330 do not conflict in any meaningful way with ERISA.  In fact, the relevant provisions of the Bankruptcy Code and the ERISA statutes can peacefully coexist.  However, there is one area that, while it does not rise to the level of a conflict, nevertheless highlights a procedural difference.  The Bankruptcy Code directs the Trustee and his professionals to seek authorization from the Court prior to taking fees for services rendered, and the Court is obligated to base its interim award on the compensation structure set forth in Bankruptcy  Code § 326.  The Bankruptcy Court must also find that the award is reasonable.  In contrast, the ERISA statutes do not require prior court authorization, and permit the Trustee as Plan administrator to defray the reasonable expenses of administering the Plan.  By applying the Bankruptcy Code over the ERISA statutes, the Court is in effect adding a layer of review to a process that is otherwise absent of judicial review.  In fact, the rights of any parties to bring an action against the Trustee for violations of § 1104 of ERISA based on an alleged breach of his duties are not compromised and remain intact.

Even if the Court were to find that the Bankruptcy Code and the ERISA statutes exhibited a material conflict, the very specific nature of the compensation scheme set forth in the Bankruptcy Code would govern over the more general terms contained in the applicable ERISA

statutes.  In addition, Congress amended the Bankruptcy Code at the same time to direct the

Trustee to act as an ERISA plan administrator, and to direct the Court to employ the formula set

forth in Bankruptcy Code § 326(a) and find that the amount awarded is reasonable when fixing

the compensation payable to the Trustee.  Congress enacted these two provisions knowingly, and

could have included a different compensation scheme when a Chapter 7 trustee performs the

duties set forth in Bankruptcy Code § 704(a)(11).  The fact that Congress did not leads the Court

to conclude that Congress intended to compensate Chapter 7 trustees acting as ERISA plan

fiduciaries in the same way trustees are compensated for all other work under the Bankruptcy

Code.

### c.  Calculation of the Trustee's Compensation

Having established that the Trustee is entitled to an interim award of compensation based

on Bankruptcy Code §§ 330 and 326, and there is no conflict with applicable ERISA provisions,

the Court must now determine the proper amount of the award.  After considering the formula

set forth in Bankruptcy Code § 326(a), which would result in a much larger award than what the

Trustee seeks, the Court must determine whether the amount actually requested is reasonable.  A

straightforward application of the formula set forth in Bankruptcy Code § 326(a), after deducting

the compensation previously awarded by the Court, would amount to $264,756.47.  The Trustee

has reduced the maximum by one-half, and seeks $132,378.24.  The Trustee has provided the

Court with time sheets setting forth the time spent by the Trustee on each task, along with a

written narrative of the services performed by the Trustee. The narrative is detailed and sets forth

the various activities undertaken by the Trustee in order to fulfill his responsibilities as Plan

administrator.  Only a small portion of the activities listed appear to be related to the Trustee's

"settlor" functions, and do not require a further deduction of the amounts requested by the Trustee.

After reviewing the applicable case law regarding what the term "reasonable" means as set forth in section 326(a), the Court finds that it is necessary to take into consideration the time records and the fact that the Trustee is performing the duties of an ERISA plan administrator in fixing the amount of the fee award. The Court also takes into consideration DOL's objections.

DOL's specific objections to the Trustee's request are that 1) the Trustee mistakenly recites to the business judgment rule in executing his responsibilities, and not the higher duty of care imposed upon an ERISA fiduciary, and 2) the Trustee made certain mistakes regarding the purchase of a fiduciary insurance policy.  In viewing the time records and the work performed by the Trustee, the Court overrules DOL's objections.  The Trustee is a fiduciary and is held to high fiduciary standards of conduct.  *In re Vebeliunas*, 231 B.R. 181, 192 (Bankr. S.D.N.Y. 1999) (other citations omitted).  The fact that the Trustee exercises his business judgment when making decisions with respect to the Plan does not interfere with his status as a fiduciary.   As DOL recites in its own pleadings, a plan fiduciary's investment decisions are subject to the "prudent person" standard under ERISA, which is analogous to the business judgment rule followed by the Trustee. *See In re Anderson*, 357 B.R. 473, 476 (Bankr. W. D. Mich 2006) (The Chapter 7 trustee is obligated to exercise due care and employ the business judgment rule when administering the bankruptcy estate, but has a separate fiduciary duty to the estate and its creditors.)

The mistake that DOL points to regarding the Trustee's erroneous purchase of a fiduciary insurance policy is minor and was quickly corrected by the Trustee.  Upon a review of the work

performed in light of the fact that the Trustee is obligated to perform the functions of an ERISA

Plan administrator by the Bankruptcy Code, the Court finds that the request made by the Trustee

is reasonable, complies with the Bankruptcy Code and therefore grants it in full. The Trustee has

sufficiently demonstrated that the amount sought in this interim fee application is reasonable

based on the nature of the services performed.

### 3.    The Trustee's Professionals

Having determined that the Bankruptcy Code and the ERISA statutes discussed above do

not substantively conflict with each other, the Court must now determine whether the answer is

the same for the compensation of the Trustee's retained professionals.  The Court concludes that

there is no substantive conflict between the Bankruptcy Code and ERISA.  As set forth above,

the Bankruptcy Code and Rules provide a comprehensive statutory scheme and procedure for

awarding fees to the Trustee's professionals.  Furthermore, the Court must enter an order finding

that the fees are "reasonable," based on the following list of factors set forth in Bankruptcy Code

§ 330(a)(3):

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Section 1108(b)(2) of ERISA specifically permits the Trustee as the Plan fiduciary to hire and pay professionals to assist in the operation of the Plan, so long as the compensation is "reasonable." There is no conflict between these two provisions, and so long as this Court finds, as it must, that the compensation is reasonable, the compensation awarded will pass muster under ERISA as well. The fact that the Bankruptcy Code requires an application to the Bankruptcy Court prior to taking compensation does not create a conflict between the statutes.

### a. K&K

K&K seeks interim compensation in the amount of $49,108.77. DOL objects, and argues for a $9,721.25 reduction of compensation to $39,687.50, plus a 20% holdback, resulting in a net payment of $31,631.00 to K&K. DOL believes that reductions are warranted based on the excessive charges for preparation of its fee application and the fee application for the Trustee, the excessive number of attorneys who appeared for an interview requested by DOL, and the $1,480.00 sought in connection with the mistaken purchase and refund of the premium for a fiduciary insurance policy. The objections, except for the $1,480.00 incurred in connection with the mistaken purchase of the fiduciary insurance policy, are overruled. The time spent on the two fee applications, resulting in $11,180.00 in fees, is not excessive given the fact that the Trustee and K&K prepared detailed fee applications, hoping perhaps to blunt any criticisms raised by DOL. Furthermore, the time spent on determining the "reasonableness" component of Section 326(a) was appropriate. Therefore, the Court awards $47,628.77 to K&K, subject to a 20% holdback.

### b. Witz

Witz seeks final payment of $44,068.75 in fees and $3,755.00 in expenses. This final award includes a previous allowance of $29,590.00 plus reimbursement of expenses in the sum of $3,755.00. DOL objects to Witz's application, and argues that the award should be reduced by $7,838.00. This amount represents the portion of time spent by Witz on a 1) Request for Information to support the Trustee's requested $500 per hour fee for ERISA plan administration ($3,163.00), 2) drafting a reply affidavit in support of the Trustee's first fee application ($2,819.00), and 3) drafting a reply affidavit to the Declaration of Marcia S. Wagner dated February 7, 2011 ( $1,856.00). Witz was retained by the Trustee as a pension plan expert, and DOL objects to the work Witz performed to justify the $500 fee on the grounds that this work provided no benefit to the bankruptcy or ERISA estates. DOL also asserts that this work was inappropriate, outside the scope of Witz's retention and resulted in providing misleading information to the Court.

Witz was retained by the Trustee to advise the Trustee in matters relating to the Plan, and according to the application for Witz's retention, he has been involved in the retirement plan industry for more than 29 years. The Trustee sought the retention of Witz in order to ensure that the Trustee complied with ERISA and DOL requirements. One of the areas in which Witz provided assistance was the determination of the Trustee's fee for acting as Plan administrator. DOL objected to the Trustee's suggested hourly rate of $500 per hour, and DOL objected in pleadings filed January 25, 2011, arguing that Bankruptcy Code § 326(a) did not apply at all and the Trustee failed to demonstrate that the proposed rate was reasonable under applicable ERISA laws. Based on the arguments raised by DOL, the Trustee responded through its duly retained expert, Witz, who had conducted a survey to help determine an appropriate billing rate for the Trustee. Included in Witz's response was the comment that DOL previously hired legal counsel

at an hourly rate above $500.00 to terminate abandoned plans when other professionals capable

of providing the same services were available at a lower rate.  DOL took serious issue with this

representation, and Witz filed a reply on February 14, 2011 to clarify that the expert who

responded to Witz's questions charged more than $500 per hour for her services, and she had

been retained by DOL to perform work on abandoned ERISA plans in the past.  However, the

expert did provide a 10% discount to DOL and her rates were blended with other associates who

were billed at lower rates.

The Court finds that the issue of how to compensate a Trustee for work performed

pursuant to Bankruptcy Code § 704(a)(11) to be complex, and does not fault Witz for

undertaking the work on this issue, especially in light of the fact that DOL lodged objections to

the Trustee's request for compensation.   In order to respond to DOL, it was reasonable for Witz

to analyze the issues as he did, and the information regarding the one expert was not misleading,

but perhaps slightly incomplete.  Based on a review of the time sheets and the narrative provided,

the Court overrules DOL's objections and finds that the amount requested is reasonable and

complies with the relevant Bankruptcy Code provisions. Therefore, the Court awards the final

application of Witz in full.

### c.  Whitfield

Whitfield was retained as auditor for the Trustee, and seeks a final award of fees in the

amount of $53,000.00 and reimbursement of expenses in the amount of $1,111.64.  Whitfield

had previously agreed to a cap of $53,000.00 plus expenses for his audit work, and DOL does

not object to this request.  DOL also advises that it has no objection to further payment to

Whitfield in the event he performs any additional necessary work at his retained rate of $250.00

per hour.  The Court has reviewed the application of Whitfield and finds that the amount

requested is reasonable and complies with the relevant Bankruptcy Code provisions. Therefore, the Court awards the final application of Whitfield in full.

### *Conclusion*

Except as noted above, the objections by DOL to the Applications are overruled, and the Court grants the Applications as follows:

Trustee:  $132,378.24 as an interim award

K&K:  $47,628.77, as an interim award, subject to a 20% holdback

Witz:  $44,068.75 in fees and $3,755.00 in expenses as a final award

Whitfield: $53,000.00 and  $1,111.64 in expenses as a final award.

The Applicants may satisfy these awards using funds in the Pguy Account, and to the extent the funds in the Pguy Account are insufficient to pay these awards in full, the Applicants may use funds from the Debtors' estate for the remainder.  The Court shall enter an order simultaneously with this Memorandum Decision.

Dated:  Central Islip, New York
      August   20, 2012                                By:  ***/s/ Robert E. Grossman***
                                                    Robert E. Grossman
                                              United States Bankruptcy Judge