UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
_____x

 In the Matter of                                    Chapter 7

THE ROBERT PLAN CORPORATION, et al                   Case No. 8-08-74573-reg
                                                     Case No. 8-08-74575-reg

                        Debtors.                     (Substantively Consolidated)
_____x

## MEMORANDUM DECISION

Kenneth Kirschenbaum ("Trustee"), the Chapter 7 Trustee in the substantively

consolidated cases of The Robert Plan Corporation ("RPC") and The Robert Plan of New York

Corporation ("RPCNY") (collectively, the "Debtors"), seeks entry of an order awarding the

Trustee commissions and awarding Kirschenbaum & Kirschenbaum legal fees and expenses on a

final basis for work performed in the Debtors' consolidated cases.  The Trustee, who has

received interim commissions in the amount of $66,602.39 from the Debtors' estates, seeks a

total award of commissions in the amount of $233,749.60 from the Debtors' estates.

Kirschenbaum & Kirschenbaum, which has received interim fees in the amount of $497,530.13

from the Debtors' estates, seeks a total award of legal fees in the amount of $660,139.23 and

expenses in the amount of $7,314.81 from the Debtors' estates.  Significantly, upon the Trustee's

appointment, he also became the administrator of the RPC ERISA Plan ("Plan"), with assets in

excess of $8 million. As a result, the Trustee was also obligated to wind up the Plan by bringing

it into compliance with applicable ERISA laws, making distributions to Plan participants and

terminating the Plan.   The Plan permits the administrator to surcharge the accounts of the Plan

beneficiaries if there are insufficient free funds in the Plan to provide reasonable compensation

for the work performed by the Plan administrator and his professionals.  While the Trustee is free

to take what he wishes from the Plan as compensation without a Court order, the Trustee would be subject to a potential challenge by the Secretary of the Department of Labor ("DOL") to seek disgorgement of amounts taken from the Plan in excess of what is permitted under ERISA law.

In cases such as this, it is common practice for Chapter 7 trustees to work with the DOL, which has oversight over the Chapter 7 trustee when acting as Plan administrator, to resolve any issues regarding the expenses incurred in performing this function.  In this case, the Trustee took a different approach, and sought to curtail the DOL's right to challenge the expenses charged by the Trustee and his professionals by seeking relief from this Court.

The Trustee has attempted to frame the issue in the context of being placed in the impossible position of having to act both as Plan administrator and Trustee. He argues the statutes require that he serve "two masters," the Bankruptcy Court and the DOL. In order to resolve this perceived dilemma, the Trustee sought orders from the Bankruptcy Court authorizing his payment and the payment of his retained professionals from Plan assets.  At the time the Trustee sought this relief, the Trustee was aware that the DOL believed the Trustee's counsel, Kirschenbaum & Kirschenbaum, was not experienced in administering ERISA plans and the firm's proposed hourly rates were far in excess of what the DOL believed were appropriate. Furthermore, the Trustee's charges for Plan services were also excessive according to the DOL. Had the Trustee candidly presented to the Court that the purpose of his motion practice was to insulate himself from the risk that the DOL may challenge his fees and the fees of his professionals, the vast bulk of the fees and costs incurred could have been avoided.  In addition, had the Trustee better understood the statutory scheme he complains about perhaps he would have realized that he largely created these problems himself by seeking to take fees and expenses from the Plan assets which were unreasonable under ERISA standards.

After deciding to surcharge the Plan participants 3% and to keep his withdrawals for expenses within the confines of the amounts generated by the surcharge, the Trustee now seeks compensation from the bankruptcy estates in the amount of $233,749.60, which includes commissions based on distributions made to Plan beneficiaries.  While the Trustee is entitled to reasonable compensation limited by the statutory commissions for administering the assets in the Debtors' consolidated estates, the Bankruptcy Code prohibits the payment of commissions based on the funds he distributed to the Plan beneficiaries.  If properly calculated based on the Trustee's distribution of bankruptcy estate property only, the maximum compensation allowable under the formula set forth in 11 U.S.C. § 326(a) is $58,018.98, plus expenses of $2,300.69, resulting in a total award of $60,319.67.  Because the Trustee has already received $66,602.39 in commissions from the bankruptcy estates, the Trustee has been overpaid by $6,282.72.

Kirschenbaum & Kirschenbaum, which was retained by the Trustee in these cases, seeks $660,139.23 in fees and $7,314.81 in expenses as a final award.  Included in the request is $254,070.48 for services performed related to the Plan.  The District Court and the Second Circuit agree that the Bankruptcy Court lacks jurisdiction to award compensation to the Trustee and his professionals from Plan funds.  The Second Circuit has also clarified that §704(a)(11) is a procedural vehicle for the assertion of substantive rights under the ERISA laws.  While the question of whether the Bankruptcy Court has jurisdiction to award fees from the bankruptcy estate to Kirschenbaum & Kirschenbaum for Plan services is unresolved at the Second Circuit level, there is no statutory basis to award such fees in this case.   The Plan work for which Kirschenbaum & Kirschenbaum seeks compensation did not benefit the bankruptcy estate, nor was it necessary to the administration of the case.  In fact, after the Plan was administered, the time spent by Kirschenbaum & Kirschenbaum on alleged Plan services could only benefit

Kirschenbaum & Kirschenbaum.  Therefore, the portion of the request related to the Plan

services must be deducted from the total request, leaving $406,068.75 plus expenses in the

amount of $7,314.81 as the maximum allowable compensation.  The Court finds this amount

reasonable and awards this on a final basis. Because Kirschenbaum & Kirschenbaum has already

received $497,530.13 in interim awards from the Debtors' estates, Kirschenbaum &

Kirschenbaum has been overpaid by $84,146.57. Pursuant to 11 U.S.C. § 330(a)(5), the Trustee

shall disgorge $6,282.72 and Kirschenbaum & Kirschenbaum shall disgorge $84,146.57 to the

Debtors' consolidated estates.


### Procedural History

On August 25, 2008 (the "Petition Date"), RPC and RPCNY filed voluntary petitions for

relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  On

January 19, 2010, the Debtors' cases were converted to cases under Chapter 7 of the Bankruptcy

Code. The Trustee was duly appointed and qualified as acting trustee for both cases.  By order

entered on September 9, 2010, the Debtors' cases were substantively consolidated.   On February

15, 2017, the Trustee filed his Final Report, the Application for Compensation for the Trustee

and for Kirschenbaum & Kirschenbaum.  On February 16, 2017, the US Trustee filed objections

to the Trustee's Application for Compensation and the Application for Compensation by

Kirschenbaum & Kirschenbaum.  On March 13, 2017, the Trustee and Kirschenbaum &

Kirschenbaum filed a Reply to the objections filed by the US Trustee.  On March 27, 2017, the

DOL filed objections to the Trustee's Application for Compensation.  On April 5, 2017, a

hearing was held on the Trustee's Final Report, and the matter was marked submitted.

### Facts

Upon conversion of the Debtors' cases from Chapter 11 to Chapter 7, the Trustee was required by statute to assume the obligation imposed upon RPC as the Plan administrator. According to the Trustee, the Plan fund held over $ 8 million and there were 281 fully vested Plan participants. The Trustee understood that his primary functions as Plan administrator would be to terminate the Plan and distribute the funds on hand to the Plan participants, to determine whether the Plan had been properly administered by Plan fiduciaries and to determine whether any legal action should be pursued against any party or person for violation of the Plan provisions or applicable ERISA laws.  The Trustee filed an Application for Orders Appointing Trustee as Administrator of Debtors' Pension Plan, Authorizing Trustee to Employ David J. Witz as Pension Consultant, Authorizing Trustee to Employ Kirschenbaum & Kirschenbaum P.C. as Legal Counsel and Authorizing Trustee to Employ Hirschfield and Kantor LLP as Accountants dated May 6, 2010 ("Retention Application"). The Trustee recognized at the outset that he would need to retain professionals including a pension specialist, attorneys and accountants to fulfill his obligations with respect to the Plan.  The Trustee also acknowledged that he would "likely be required to report to and communicate with the React Coordinator at the Department of Labor." (Retention Application).  At the time the Trustee became obligated to act as the Plan administrator, the Plan had approximately $130,000 in a fund created from employer contributions to employees who left employment before their retirement benefits vested ("Forfeiture Fund"), which funds were meant to be used to cover the reasonable costs and expenses incurred in administering the Plan.  Plan, § 19.05. The Plan also provides that the Trustee could pay for the costs of administering the Plan from the remaining trust fund by assessing a surcharge against the accounts of Plan participants.  Plan, §§ 19.05, 20.14.

In the Retention Application the Trustee sought, *inter alia*, to retain Kirschenbaum & Kirschenbaum as counsel to the Trustee, to fix the Trustee's hourly rate at $500.00, and to authorize the Trustee to pay himself and all retained professionals from Plan assets.  On June 10, 2010, the Trustee filed a motion ("Retention Motion") that superseded the Retention Application and sought entry of an order *inter alia*  1) authorizing payment of the Trustee's expenses for his services as Plan administrator at an approved hourly rate of $500.00 per hour, up to $15,000 without further Court order, 2) authorizing the employment of David J. Witz as pension consultant, plus the payment of up to $12,500 without further Court order, 3) authorizing the retention of Kirschenbaum & Kirschenbaum, plus the payment of up to $10,000 without further Court order, and 4) authorizing payment to the Trustee and all retained professionals including Travis L. Whitfield, CPA, PLLC ("Whitfield") from the Plan assets, including the Forfeiture Fund, and from funds surcharged against Plan participants' accounts.  In his application in support of the Retention Motion, the Trustee represented that there were approximately 275 fully funded Plan participants, and that there was over eight million dollars in the Plan fund.  The Trustee further represented that some of the Trustee's obligations as Plan administrator could be more economically handled by Kirschenbaum & Kirschenbaum.  The Trustee represented as follows:

> [C]ompensation to the Trustee as [Plan administrator], his expenses, and his professionals, are to be paid "not by the bankruptcy estates but by the Plan funds that are available in the Forfeiture Fund or participant accounts. . . . Once the Plan is fully terminated and all expenses of termination paid, and all participants' funds distributed, the balance remaining in the Forfeiture Plan [sic] will either be distributed to Plan participants or paid to the bankruptcy estate." Retention Motion, para. 19.  The Trustee also stated that '[i]t appears that the Plan has sufficient funds to pay for termination expenses.  Therefore this Court will likely not be presented with the issue of whether estate funds should be used in connection with the termination of the Plan.  The Plan funds are not property of the estate.

Retention Motion, paras. 19, 20.  According to the Trustee, Whitfield proposed to charge a total of approximately $28,000 for his services.

On August 6, 2010, the Trustee filed a supplemental affirmation in support of the Retention Motion, which provided updated information on the status of the Plan.  The Trustee represented that according to pension consultant David Witz, the Plan was not in compliance with ERISA and the funds of almost 100 participants had to be restored. As a result, the number of participants increased from 275 to 375 and as a result, most of the Forfeiture Fund had been depleted.  The Trustee also claimed that because the Plan was not in compliance with certain requirements, his initial budget for professional services would be insufficient to cover the costs of administering the Plan.  The Trustee further recited that he "determined that 3% of the funds on hand would create a sufficient fund, perhaps leaving a surplus to be returned to participants." The 3% was surcharged against the Plan participants and transferred to an expense account called the "Pguy Account," which would be used to cover the expenses of winding up the Plan. The Trustee concluded that once the funds in the Pguy Account were exhausted, the only other source of funds to provide compensation to the Trustee and his professionals would be the bankruptcy estate. By this supplemental affirmation, the Trustee sought entry of an order authorizing the payment of $40,940 to the Trustee, $6,900 to Travis Whitfield, $27,631.25 to David Witz and $13,432.75 to Kirschenbaum & Kirschenbaum.

The DOL filed opposition to the Retention Motion, asserting that the Bankruptcy Court lacked jurisdiction to grant the relief sought by the Trustee, especially where the payments were to be made from Plan assets and would have no effect on the Debtors' estates. Ultimately, the Court authorized the Trustee to retain professionals and terminate the Plan, but denied the remaining requests as premature. *In re The Robert Plan Corp.*, 439 B.R. 29 (2010) ("*The Robert*

*Plan I*"). The Court also noted that consistent with the Trustee's representations, any order authorizing compensation would require that the Trustee satisfy them from Plan funds first before using bankruptcy estate funds. *The Robert Plan I*, 439 B.R. at 45.

On January 5, 2011, interim fee applications were filed for the Trustee, Kirschenbaum & Kirschenbaum, Witz and Travis Whitfield ("First Interim Fee Application). In the First Interim Fee Application, the Trustee recited that he made net distributions of Plan funds totaling $7,412,504.41 on account of 280 Plan participants. The Forfeiture Fund held $40,580.27 and the Pguy Account held $260,596.04. The Trustee sought $57,365.42 in fees and expenses, with a 20% holdback, resulting in a request for $45,300 in fees and $740.42 in expenses for the services rendered under 11 U.S.C. § 704(a)(11). The Trustee reported that substantial services remained to be performed with respect to the Plan because 92 Plan participants failed to respond to the Trustee's attempts to contact them. The funds relative to the 92 Plan participants had to be transferred from Fidelity Investments to another fiduciary to act as custodian of the remaining accounts. According to the Trustee, he would also be filing corrective action with the IRS to complete a late technical amendment to the Plan. Again, the Trustee represented that he would use the Forfeiture Fund and funds from the Pguy Account first, and in the event there were insufficient Plan assets, the Trustee would seek to satisfy any remainder from bankruptcy estate assets.

In addition to seeking interim compensation for himself, the Trustee sought interim compensation for his retained professionals, including Kirschenbaum & Kirschenbaum. Kirschenbaum & Kirschenbaum sought $43,389.00 in fees, with no holdback. Again, the DOL filed opposition to the requests of the Trustee and Kirschenbaum & Kirschenbaum primarily on the basis that they were not experienced in administering ERISA plans. According to the DOL,

the Trustee's compensation should be reduced to $18,200 based on a more appropriate $200 hourly rate and a 20% holdback. The DOL also recommended that Kirschenbaum & Kirschenbaum's fees be subject to a 30% holdback. On March 1, 2011, the Court entered an order authorizing interim compensation for the Trustee in the amount of $45,300 plus expenses in the amount of $740.42, and interim compensation to Kirschenbaum & Kirschenbaum in the amount of $43,389.00 (collectively, the "First Interim Compensation Orders"). After "extensive discussions" with the DOL concerning the allocation of the payment of these awards from Plan funds and bankruptcy estate funds, the Trustee took $34,000 in compensation and $740.42 for expenses from the Plan funds, and $11,300 from the bankruptcy estate. Second Interim Application by Trustee for Compensation ("Second Interim Application"), p. 3-4. Contrary to the Court's prior directive in *The Robert Plan I* that the Trustee first seek payment from Plan funds, and contrary to the Trustee's own representations, the Trustee took a portion of his award from the Debtors' estates. The entire amount awarded to Kirschenbaum & Kirschenbaum was satisfied from Plan funds

On November 9, 2011, the Trustee filed a Second Interim Applications seeking compensation in the amount of $132,378.24 for the Trustee, $49,108.53 in fees for Kirschenbaum & Kirschenbaum, and fees and expenses for David J. Witz and Whitfield. According to the Trustee, approximately $144,000 remained in the Pguy Account and another $2,376.00 would be deposited into the Pguy Account, which funds would be used to satisfy the awards made pursuant to the Second Interim Applications. The Trustee represented that if the funds in the Pguy Account were insufficient to pay all of the administrative fees and expenses awarded, the Trustee would seek to have the balance paid with bankruptcy estate funds. The Trustee  disclosed that after extensive discussions with the DOL regarding the allocation of

payment of the prior interim award to the Trustee, the Trustee settled on taking a portion of the award from the Plan and the Debtors' estates.  However, the Trustee never explained why he took action that was contrary to his prior representations and the Court's prior directive.   Finally, the Trustee represented that by awarding the interim requests, the balance in the Plan accounts would be reduced to $0, and the Trustee could conclude his duties as Plan administrator. If any funds remained in the Plan accounts, the Trustee would have to make a distribution to the participants, which would be of little benefit to the participants compared to the additional administrative fees and expenses incurred in making another distribution. In addition, another surcharge against the participants' funds would have to be undertaken in order to create a fund to pay the administrative fees and expenses incurred in making such distribution.

In his application, the Trustee calculated that if he sought compensation based on the formula provided in Section 326(a) of the Bankruptcy Code, the maximum allowable compensation would equal $310,056.47.  Given the prior award of $45,300, the Trustee would be entitled to a maximum award of $264,756.47.  The Trustee sought approximately half that total amount.

In his application, the Trustee detailed the time spent during a meeting with the DOL regarding the First Interim Application and the negotiations with the DOL regarding the allocation of payment of the awarded compensation.  The DOL opposed the Second Interim Application by the Trustee and Kirschenbaum & Kirschenbaum, and by memorandum decision dated August 20, 2012, the Court awarded $132,378.24 to the Trustee, and $47,628.77 less a 20% holdback to Kirschenbaum & Kirschenbaum.  *In re The Robert Plan*, 493 B.R. 674 (Bankr. E.D.N.Y. 2012) ("*The Robert Plan II*").  In its order, the Court directed that the Trustee satisfy the awards from the Pguy Account, and to the extent there were insufficient funds to pay the

awards, funds from the Debtors' estates could be used to pay any remainder.  Based on the

Court's order, the Trustee paid Witz and Travis L. Whitfield in full from the Plan funds and paid

$77,075.85 of the Trustee's award from Plan funds.[1]  The remaining $55,302.39 due to the

Trustee was taken from the Debtors' estates.  The Trustee paid Kirschenbaum & Kirschenbaum

$38,103.02 (representing $47,628.77 awarded less a 20% holdback in the sum of $9,525.75)

entirely from Plan funds.

The DOL filed an appeal from the Court's decision primarily on the basis that the

Bankruptcy Court lacked jurisdiction to fix any award payable from Plan funds.  On March 3,

2014, the District Court for the Eastern District of New York issued a decision reversing the

Bankruptcy Court's decision.  *U.S. Dep't of Labor v. Kirschenbaum*, 508 B.R. 257 (E.D.N.Y.

2014) ("*The Robert Plan III*").  The Trustee appealed the District Court decision, which was

affirmed by the Court of Appeals for the Second Circuit pursuant to a decision issued on

February 5, 2015.  *In re Robert Plan Corp.*, 777 F.3d 594 (2015) ("*The Robert Plan IV*").

On September 18, 2014, after *The Robert Plan III* was issued and before *The Robert Plan

IV* was issued, Kirschenbaum & Kirschenbaum filed a Third Interim Application for

Compensation seeking, *inter alia*, compensation for the time spent from November 10, 2011

through September 12, 2014.  Kirschenbaum & Kirschenbaum sought $552,811.25 less a 10%

holdback, for a net award of $497,530.13.  Included in this amount was a request in the amount

of $158,725.00 for services rendered by Kirschenbaum & Kirschenbaum purportedly in

connection with the performance of the Trustee's duties as Plan administrator.  In its application,

Kirschenbaum & Kirschenbaum stated that any additional compensation awarded to the firm for

services rendered in connection with the Plan would have to be satisfied by bankruptcy estate

funds because there were no other Plan funds remaining.  By order dated December 4, 2014, the

Court awarded $354,677.63 to Kirschenbaum & Kirschenbaum on an interim basis, and

adjourned the portion of the request for $158,725.00 related to services rendered in connection to

the Plan to a later date.   On December 23, 2014, the Trustee filed a declaration in support of the

Third Interim Application of Kirschenbaum and Kirschenbaum regarding the remaining

$158,725.00.  The Trustee asserted that the fees sought were actually related to administrative

issues and services performed on behalf of the Trustee, for the benefit of the creditors of the

Debtors' estates, and not for the benefit of the Plan participants.  The Trustee made the following

representations:

> [V]irtually all of the services categorized as Pension Plan services in the Application
> were rendered in connection with appellate proceedings stemming from the Bankruptcy
> Court's decision dated August 20, 2012 in which the Court authorized [the Trustee] to
> satisfy prior awards of compensation for services rendered in connection with the
> performance of  my Section 704(a)(11) duties from Plan funds and, to the extent the Plan
> funds were insufficient to pay the awards in full, to use estate funds for the remainder.

Trustee's Declaration in Support of the Third Interim Application, p. 2.   The Trustee also

represented that "[t]he purpose and the goal of K&K's services was to preserve the Bankruptcy

Court's jurisdiction and authority over the Trustee, and to preserve the Estate funds for the

benefit of the creditors of the Estate by not having to use the Estate funds to subsidize the

payment of fees incurred in connection with the administration of the Plan for the benefit of the

Plan participants."  Trustee's Declaration in Support of the Third Interim Application, p. 6.

A hearing was held on January 28, 2015, there was no opposition to this interim request,

and the remaining portion of the Third Interim Application was granted in full. On February 5,

2015, an order was entered awarding Kirschenbaum & Kirschenbaum these additional fees in the

amount of $158,725.00 less a 10% holdback, for a net award of $142,852.50.  On the next day,

the Trustee filed a motion seeking authorization to incur legal fees and expenses to prepare a

petition for a writ of *certiorari* to the Supreme Court and to file the necessary papers and attend appearance to pursue such appeal. The Trustee's motion was denied by the Court. On May 6, 2015, the Trustee filed a writ of *certiorari* seeking review of the Second Circuit Court's affirmation of the District Court decision. On or about October 13, 2015, the Supreme Court denied *certiorari.* In sum, the Trustee received interim awards aggregating $177,678.24. It appears that $111,075.85 was taken from the Plan, which, when combined with the payment to other professionals, has exhausted the Plan in full, and $66,602.39 was taken from the Debtors' estates. Kirschenbaum & Kirschenbaum received interim awards aggregating $597,022.15. $81,492.02 was taken from Plan funds and $497,530.13  was taken from the bankruptcy estates.

On February 15, 2017, the Trustee filed the Final Report and the Final Applications ("Final Applications") for, *inter alia*, the Trustee and Kirschenbaum & Kirschenbaum. Kirschenbaum & Kirschenbaum seeks a total award of $660,139.23 in fees and $7,314.81 in expenses from the bankruptcy estates. The Trustee seeks a total award of $233,749.60 in fees and $2,300.69 in expenses from the bankruptcy estates.

In his Final Report and Application, the Trustee sets forth the work he performed for the Debtors' estates in general and for the Plan. According to the Trustee, he evaluated the Plan, retained experts to assist in performing the Plan administrator duties, including all of the services needed to terminate the Plan, distribute Plan assets, file final forms, and to evaluate the conduct of Plan fiduciaries. The Trustee had to discuss procedures regarding the conversion and liquidation of the Plan, and for the rolling over of accounts for participants who could not be located. The Trustee also had to implement technical amendments to the Plan, including filing corrective action with the IRS. A substantial portion of the case narrative details the time spent by the Trustee engaging in skirmishes with the DOL over the Bankruptcy Court's authority to

award fees and expenses in connection with section 704(a)(11) duties, and in appellate litigation with the DOL, including the request for *certiorari* from the Supreme Court.  In sum, the Trustee seeks final compensation equal to the total maximum allowable under the formula set forth in § 326(a), when all of the fees already paid to the Trustee from the Debtors' estate and the Plan are taken into account.

Kirschenbaum & Kirschenbaum outlines the steps taken by the firm for the benefit of the Debtors' estate and the Plan.  In connection with the Debtors' estates, the firm reviewed all pending adversary proceedings and obtained settlements on several of them, facilitated the sale of two vehicles, commenced a preference action which resulted in a settlement with the defendant, and prepared fee applications.  In connection with the Plan, the firm opposed the appeal filed by the DOL, filed an appeal of the District Court to the Second Circuit, and prepared a request for *certiorari* to the Supreme Court.

### Objections to Trustee's Fee Application

The US Trustee and the DOL object to the Trustee's fee request.  According to the US Trustee, the Trustee improperly calculated his commission based on distribution of estate and non-estate property outside of the case.  Because the Plan distributions are distributions of non-estate property outside of the bankruptcy case to parties who do not have claims in the bankruptcy case, they must be excluded in the calculations.  According to the US Trustee, if properly calculated, the maximum compensation allowable under § 326 is $58,018.98.  Further, the Trustee was directed by this Court and the Eastern District of New York to look to the bankruptcy estates for payment only if there were insufficient funds in the Plan to pay the expenses incurred in its administration of the Plan.  Instead of complying with this directive, the Trustee obtained reimbursement of his alleged expenses as the Plan administrator from the Plan

and from the Debtors' estates.   The Trustee could have surcharged the Plan in excess of the initial surcharge in order to comply with the Court's directive that he look to satisfy the award from the Plan funds, but chose not to do so.  It appears to the US Trustee that the Trustee caused the shortfall, and is putting the burden of the shortfall on the creditors of the bankruptcy case, in an effort to circumvent ERISA and the oversight of the DOL. Finally, the US Trustee points out that if the compensation is granted as requested, there would be no distribution to other administrative, priority or unsecured creditors.

The DOL objects to the Trustee's request related to the Plan administrator duties only. The DOL joins in the US Trustee's objection and argues that a commission-based formula calculated upon the distribution of bankruptcy estate assets cannot be applied to ERISA plan assets, which the Second Circuit recognized are governed by a separate body of law. *The Robert Plan III,* 777 F.3d  at 597.

### Objection to Fee Application by Kirschenbaum & Kirschenbaum

The US Trustee objects to the request for legal fees by Kirschenbaum & Kirschenbaum. The US Trustee claims that the fee application fails to adequately segregate the time spent by task undertaken, and it is impossible to determine how much time was expended on services rendered for each litigation.

The US Trustee also alleges that the fee request is "patently unreasonable" based on the nature of the services provided and the lack of benefit to the bankruptcy estates for those services.  The US Trustee observes that the bulk of the services relate to the litigation between the Trustee and the DOL wherein the Trustee sought to insulate his professional fees from review by the DOL. The only beneficiary of these services were the professionals seeking the fees, not the creditors of the estate.   The US Trustee calculates that the firm spent over $500,000

battling the DOL over jurisdictional issues concerning awarding his fees and determining the source of the payment.  The US Trustee states that none of the services rendered by Kirschenbaum & Kirschenbaum relating to the termination of the Plan and the DOL litigation are compensable under a cost benefit analysis, a simple benefit analysis or under *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 192 L.Ed. 2d 208 (2015).

*Discussion*

### 1.  Case History

This case has generated a series of written decisions concerning the role of the Chapter 7 trustee when acting as ERISA plan administrator under 11 U.S.C.  § 704(a) (11). In *The Robert Plan I,* this Court made certain rulings regarding the Bankruptcy Court's jurisdiction over the Chapter 7 trustee when acting as ERISA plan administrator.  First, this Court held that it had core jurisdiction over the Chapter 7 trustee when acting as ERISA plan administrator.  Second, this Court held that this Court had jurisdiction over the retention and compensation of professional retained by the Trustee for work performed in connection with § 704(a) (11).  Third, the Court held that any award granted by the Court would first be satisfied from ERISA plan funds. Lastly, the Court denied as premature the Trustee's request to take actions in the future with respect to termination of the Plan as well as his interim request for compensation prior to providing services in connection with the Plan.

In *The Robert Plan II*, this Court held that the Bankruptcy Court had core jurisdiction to hear and grant applications for compensation by the Trustee and his professionals regardless of whether they were paid from Plan assets or the bankruptcy estate. Based on this finding, the Court concluded that the Trustee's compensation for work performed under § 704(a) (11) was

determined by the formula set forth in § 326(a) of the Bankruptcy Code, which fixed the maximum amount the Trustee could seek as compensation. Section 326 was deemed applicable on the basis that the Plan beneficiaries were "parties in interest" as they could be affected by the Trustee's request for commissions and fees of his professionals, depending upon whether they were paid from Plan assets or the bankruptcy estate. Furthermore, neither § 330 (a) nor § 326 conflicted with applicable ERISA provisions. As in *The Robert Plan I,* this Court directed that the compensation be paid first from Plan assets, and then from the bankruptcy estate if Plan assets were insufficient.

In *The Robert Plan III*, the District Court for the Eastern District made several rulings pursuant to the DOL's appeal of *The Robert Plan II*. First, the District Court ruled that the DOL had standing to appeal the compensation awards in *The Robert Plan* II. Second, the District Court held that ERISA and the Plan documents establish and control the substantive rights and obligations of the Trustee when acting as Plan administrator, notwithstanding §704(a)(11). As a result, the Bankruptcy Court lacked core jurisdiction over the Trustee's obligations as Plan administrator. Third, any application to use assets of the Plan to pay administration expenses of the Plan was non-core, and not related to the bankruptcy cases. Therefore, the Bankruptcy Court lacked jurisdiction to order payment of fees and expenses of the Plan administrator and his professionals from the Plan assets. Fourth, the DOL and the Plan participants were eligible to bring a civil action against the Trustee for any breaches of his fiduciary duties as Plan administrator under 29 U.S.C. § 1132(a)(2). Fifth, in what appears to be *dicta*, the District Court opined that the Bankruptcy Court had "related-to" jurisdiction to award compensation from the bankruptcy estate for the Trustee's work as Plan administrator. However, if the Plan expressly granted the Plan administrator authority to use bankruptcy estate funds to pay administration

expenses, the Bankruptcy Court would lack "related to" jurisdiction to approve the use of

bankruptcy estate funds for ERISA related expenses.

In *The Robert Plan III*, the Court of Appeals for the Second Circuit upheld the decision

by the District Court.  The Second Circuit concluded that § 704(a)(11) "neither alters the

substantive duties of ERISA plan administrators nor establishes substantive rights regarding

ERISA plans.  Instead, § 704(a)(11) provides the 'procedural vehicle for the assertion of a right

conferred by some other body of law' – in this case, ERISA.  *In re U.S. Brass Corp*., 110 F.3d

1261, 1268 (7th Cir. 1997)."  *Id*. at 597.   Therefore, the Bankruptcy Court had neither core

jurisdiction nor "related to" jurisdiction over compensation of the Trustee or his professionals

from the Plan funds.  In a footnote, the Second Circuit stated that it expressed no opinion as to

whether the Bankruptcy Court would have jurisdiction over an application by the Trustee

seeking compensation from the Debtors' estates for services rendered in administering the Plan.

As a result of these decisions, the law regarding the Chapter 7 trustee's role when acting

as ERISA plan administrator, and the Bankruptcy Court's oversight over the Chapter 7 trustee

when acting as Plan administrator has received some clarification in this jurisdiction.  First, the

Bankruptcy Court lacks core jurisdiction over the Trustee's obligations as Plan administrator.

Second, the Bankruptcy Court lacks jurisdiction to fix fees and expenses of the Chapter 7 trustee

and his professionals if they are being paid from ERISA plan assets.  Third, while Judge

Feuerstein stated in *dicta* that the Bankruptcy Court has "related to" jurisdiction when a trustee

requests that such award be paid from bankruptcy estate funds, the Second Circuit specifically

expressed no view on this issue.  However, the Second Circuit has concluded that § 704(a)(11)

acts as a procedural vehicle only and does not confer any substantive rights upon the Chapter 7

trustee.  To the extent a Chapter 7 trustee is compensated by ERISA plan funds, the Chapter 7

trustee can take such funds free from the scrutiny of the Bankruptcy Court, but the Chapter 7 trustee would be subject to any applicable ERISA laws governing his or her compensation or conduct, enforceable outside of the Bankruptcy Court. This analysis would apply to any professionals retained by the Chapter 7 trustee to assist him or her with the administration of an ERISA plan.

The appellate decisions in this case also shed light on the Trustee's purpose in seeking certain relief from the Bankruptcy Court.  The Trustee acknowledged on appeal that the Bankruptcy Court was "'doing no more than authorizing the Trustee to do that which he was already authorized to do under ERISA and the Plan documents.'  Trustee Br., at 19." *The Robert Plan III* at 269.  "    Therefore, any fear asserted by the Trustee over serving two masters having different rules was baseless.  The District Court found that the Trustee acted "in order to secure derived judicial immunity from potential liability [under applicable ERISA law]." *Id*.  The District Court concluded that the Trustee could not insulate himself from any future attempt by the DOL to recover Plan funds taken by the Trustee and his professionals.  Therefore, the Trustee was free to use Plan funds, which were plentiful, to pay the expenses of administering the Plan, but the DOL would have the right to seek disgorgement if the expenses were not reasonable and did not meet the statutory requirements set forth in ERISA.  Since the DOL made clear at the outset that the amounts the Trustee and Kirschenbaum & Kirschenbaum were seeking to charge were unreasonable and excessive, the Trustee understood that he could be facing a challenge by the DOL in the future unless he could find a way to curtail the DOL from exercising its rights.

Armed with the decisions by the District Court and the Second Circuit, the Court shall turn to the Final Applications for the Trustee and Kirschenbaum & Kirschenbaum.

### 2.    Trustee's Commissions

For his work as the Plan administrator, the Trustee has received a total of $66,602.39 from the bankruptcy estates and $111,075.85 from Plan assets.  The Trustee seeks an additional $155,041.27 from the bankruptcy estates for his commissions.  The Trustee bases his request on the maximum he asserts the Trustee could receive by statute, and includes the commissions he claims he is entitled to receive for administering Plan assets in the amount of  $9,560.215.70 plus bankruptcy estate assets in the amount of $1,158,965.84.

The Trustee made a conscious decision in this case to disregard the Court's ruling that the Trustee first look to the Plan funds to satisfy any award, which directive was reiterated by the District Court in *The Robert Plan III*. Instead, the Trustee took only a portion of his initial award from the Plan, and took the rest from the Debtors' estates.  Nothing precluded the Trustee from surcharging the Plan beneficiaries more than the 3%  surcharge he imposed, in order to cover the Trustee's entire request related to administering the Plan.  The Trustee is now bound by his own decision to limit the amount he surcharged the Plan to cover these expenses.  The Trustee also repeatedly represented to the Court that there were sufficient funds in the Forfeiture Fund to cover his expenses, with perhaps a surplus remaining.  Even after the Forfeiture Fund was reduced and the Pguy Account was depleted, he still had the option to impose an additional surcharge against the Plan, which held over $8 million, to cover any shortfall in his estimations.

Despite the fact that the Trustee claims in his Reply Brief filed in support of the Final Application that he received practically no guidance from the DOL when determining how much to take as compensation, the Trustee previously represented in the Second Interim Application that he had extensive discussions with DOL to determine an appropriate amount to take from the Plan for the Trustee's work on administering the Plan.  These two statements are contradictory, and based on the conduct of the DOL at the hearings before the Court, it appears that the Trustee

made a calculated decision to restrict his compensation from the Plan based on DOL

commentary.  The DOL objected at the hearings before the Court that the compensation sought

by the Trustee when acting as Plan administrator was excessive and not in line with what was

customarily charged.  The Trustee had sufficient guidance from the DOL, and chose to limit the

amount he took from the Plan as compensation based on that guidance. Having taken

approximately $111,000 from an ERISA plan with assets in excess of $8 million, the Trustee

cannot now claim that there were insufficient funds in the Plan to satisfy the entire amount he

now seeks.

Even if the Court were to consider compensating the Trustee from the Debtor's estate for

work performed as Plan administrator, there would be no legal basis to grant such award.  The

District Court has held that the Bankruptcy Court lacks core jurisdiction over the Trustee's

obligations as Plan administrator.  As a result, it does not appear that the Bankruptcy Court could

rule on the propriety of actions taken by the Trustee with respect to the Plan.  Without such

authority, the Bankruptcy Court could not determine whether the Trustee's actions are

compensable under the Bankruptcy Code. In addition, the appellate history of the case dictates

that the funds distributed by the Trustee to Plan beneficiaries are not to be included in the

formula set forth in § 326(a).

11 U.S.C. § 326(a) provides that "the court may allow reasonable compensation under

section 330 of this title of the trustee for the trustee's services, payable [pursuant to the statutory

formula based] upon all moneys disbursed or turned over in the case by the trustee to parties in

interest, excluding the debtor, but including holders of secured claims."    11 U.S.C. § 326(a).

The Court previously held that the phrase "moneys disbursed or turned over by the trustee" is not

limited to bankruptcy estate funds.  "Disbursed funds need not be 'property of the estate.'

Neither § 326(a)'s plain words nor Courts interpreting the same include the term 'property of the estate' within § 326(a). *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 478 (Bankr. W.D. Tex. 1990)." *In re Circle Investors, Inc.*, 2008 WL 910062 (Bankr. S.D. Tex. Apr. 3, 2008) (footnote omitted).

With the benefit of the appellate decisions in this case, the Court is in a position to revisit whether the Plan beneficiaries are "parties in interest." The term "party in interest" is found in many different sections of the Bankruptcy Code and Bankruptcy Rules but is not defined in the Bankruptcy Code. Courts have recognized that it can have different meanings depending upon where the term is located in the Bankruptcy Code. *In re Citi-Toledo Partners II*, 254 B.R. 155, 162-63 (Bankr. N.D. Ohio 2000). For the purposes of determining who is a "party in interest" under § 326(a), courts have adopted various tests. However, because the Bankruptcy Court is not vested with the jurisdiction to order the payment of compensation to the Trustee from Plan assets, the Plan participants do not fit within even the least restrictive interpretation of "party in interest." The US Trustee asserts that for the purposes of § 326(a), "parties in interest" is limited to entities who hold claims against the bankruptcy estate or who are entitled to an administrative expense in the case. *In re Market Resources Development Corp.*, 320 B.R. 841, 847 (Bankr. E.D. Va. 2004); and *In re Citi-Toledo Partners II*, 254 B.R. at 163. According to the courts supporting this definition, the Bankruptcy Code provides a limited list of parties to whom distribution is appropriate, and unless the parties fit within this definition, any distribution would not be made in furtherance of the overall distribution process set forth in the Bankruptcy Code *Pilch v. Bareham*, 2008 WL 2758351 (W.D.Mich. Jul. 14, 2008) at *7 (citing *In re Citi-Toledo Partners II*, 254 B.R. at 163; and *In re Market Resources Development Corp.*, 320 B.R. at 847).

Several courts have adopted a more expansive definition, finding that "parties in interest" include "those persons with a personal stake or pecuniary interest in the outcome of the controversy." *Pilch v. Bareham*, 2008 WL 2758351 at *7 (citing *Normali v. O'Donnell (In re O'Donnell)*, 326 B.R. 901 (BAP 6th Cir. 2005); In re Amatex Corp., 755 F.2d 1034, 1041-44 (3d Cir. 1985).

Finally, courts have employed an additional analysis to cover property co-owned by a Chapter 7 debtor and a non-debtor and sold in the bankruptcy case, and other similar transactions which require approval by the Bankruptcy Court. Under these circumstances, "'[t]he crucial test seems to be whether the particular property has been justifiably administered during the bankruptcy case and whether the trustee has properly performed services in relation to that property.'" *In re Rybka*, 339 B.R. 464, 471 (Bankr. N.D. Ill. 2006) (citing 3 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 326.02[2][f], at 326-14 (15th ed. Rev. 2005) (footnote omitted)); see also *In re Invent Resources, Inc.*, 518 B.R. 169, 177 D. Mass. 2014 (Trustee's sale of intellectual property partially owned by the debtor was subject to commissions for full amount of sale); *In re Schautz*, 390 F.2d 797 (2d Cir. 1968) (Calculation of commissions payable to trustee included sale proceeds of property held jointly by debtor and non-debtor); and *In re Circle Investors, Inc.*, 2008 WL 910062 (Bankr. S.D. Tex. Apr. 3, 2008) (Calculation of commissions payable to trustee included proceeds of adversary proceeding shared with another bankruptcy estate and sale of stock owned by debtor and non-debtor).

Unlike the situations described above, the Plan funds were not distributed to creditors of the Debtors, which disqualifies the recipients from falling into the more restrictive definition of "parties in interest." In addition, the Plan funds were not distributed to parties holding a pecuniary interest in the Debtors' consolidated cases, as the distributions were made outside of

the bankruptcy case and any decision by the Bankruptcy Court in this case will have no effect on the recipients of Plan assets. Finally, the Bankruptcy Court lacks jurisdiction to (i) determine whether the distributions to the Plan recipients were appropriate and to (ii) determine the propriety of the Trustee's conduct in connection with his duties as Plan administrator. As a result of the appellate history of this case, there is now binding precedent precluding the Bankruptcy Court from asserting jurisdiction over the Trustee's compensation taken from Plan assets. Any amount awarded by the Bankruptcy Court to the Trustee as commissions in the bankruptcy case will have no impact on the Plan beneficiaries. Therefore, under any of the above-described tests, the Plan beneficiaries are not "parties in interest" in the context of § 726(a).

Having decided that the Trustee is not entitled to compensation for the work he performed as Plan administrator from bankruptcy estate assets, the Court must fix the Trustee's compensation under § 326(a) for the work performed in this case. The actual disbursements made by the Trustee in the case to parties in interest totals $1,158,965.84. Based on the formula set forth in § 326(a), the Trustee is entitled to maximum commissions of $58,018.98 plus $2,300.69 in expenses. The Trustee has received $66,602.39 from the Debtor's estate, which results in an overpayment to the Trustee in the amount of $6,282.72

### 3.    Final Fee Application of Kirschenbaum & Kirschenbaum

Kirschenbaum & Kirschenbaum seeks approval of a final award of legal fees in the amount of $660,139.23 and expenses in the amount of $7,314.81. Kirschenbaum & Kirschenbaum has already received $81,492.02 from Plan assets, and if the Court awards the entire amount requested by Kirschenbaum & Kirschenbaum, the total amount of final

compensation to Kirschenbaum & Kirschenbaum will be $741,631.25. Of the $660,139.23 sought from the bankruptcy estates, Kirschenbaum & Kirschenbaum has already received interim awards of compensation in the aggregate amount of $497,530.13. The first interim award was in the amount of $354,677.63 for services performed in connection with administering the bankruptcy estates. The second interim award was in the amount of $142,852.50, which Kirschenbaum & Kirschenbaum represented, in its supplemental papers in support of the interim award, was for services performed in connection with administering the bankruptcy estates. In the Final Fee Application, Kirschenbaum & Kirschenbaum now represent that the prior interim award in the amount of $142,852.50 was for work performed in connection with the Plan. It appears that this interim application was for work almost exclusively related to the appeal taken by the DOL and the appeals by the Trustee. Based on the interim awards already granted, Kirschenbaum & Kirschenbaum seeks an additional $162,609.10 from the Debtors' consolidated estates.

### a. Legal standard

The Court may award fees to professional persons pursuant to § 330 of the Bankruptcy Code. 11 U.S.C. § 330. Section 330 provides in relevant part:

After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award ...

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by an such person; and

> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

In determining reasonable compensation, section 330 directs the Court to consider:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial
    at the time which the services was rendered toward the completion of, a case
    under this title;

(D) whether the services were performed within a reasonable amount of time
    commensurate with the complexity, importance and nature of the problem,
    issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified
    or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary
    compensation charged by comparably skilled practitioners in cases other than
    cases under this title.

11 U.S.C. § 330(a)(3).

In determining whether the services provided were necessary, the Court must evaluate them based on the period of time during which the services were rendered. *In re Kohl*, 421 B.R. 115, 125 (Bankr.S.D.N.Y. 2009) (citing 3 COLLIER ON BANKRUPTCY ¶. 330.04[1][b][iii]). Under Second Circuit authority, services are deemed necessary if they provide a benefit to the debtor's estate. *Id.* (citing *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997)). According to the Second Circuit, the Bankruptcy Court is to apply the test objectively, "based on what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996) (other citation omitted). Compensation for services may also be awarded under § 330 if the work is "necessary to the administration of the case." 11 U.S.C. § 330(a)(4). The applicant has the burden of proof that its services were reasonable and necessary. *In re GSC Group, Inc.*, 502 B.R. 673, 741 (Bankr. S.D.N.Y. 2013).

### b.  Bankruptcy Estate Services

The US Trustee objects to the final application by Kirschenbaum & Kirschenbaum with respect to services performed for the Debtors' consolidated estates.  The US Trustee devotes one paragraph of its objection to these services, claiming that it was impossible to determine how much time was spent on specific tasks related to certain litigation commenced by the Trustee.  In response to the US Trustee's objections, Kirschenbaum & Kirschenbaum has clarified that the total amount sought by Kirschenbaum & Kirschenbaum for litigation services totals $323,150.00.  The total amount recovered in the litigations was $1,098,000, and the Court finds that the total amount sought for time spent on litigation is reasonable, considering the results achieved in each of the four litigations.  The Court has also reviewed the time records classified as "General" in the amount of $61,238.75 and "Law Clerk" in the amount of $21,680.00 and concludes that these services were reasonably and necessarily incurred with respect to the administration of the Debtors' consolidated estates.   Therefore, the Court awards Kirschenbaum & Kirschenbaum $406,068.75 in fees and $7,314.81 in expenses for work performed on behalf of the bankruptcy estates.

### c.  Plan Services

The remainder of Kirschenbaum & Kirschenbaum's final request totals $335,562.50, and falls within the category of Plan services. Kirschenbaum & Kirschenbaum has already received $81,000 from Plan assets, and now seeks $254,070.47 for Plan services from the bankruptcy estate. Kirschenbaum & Kirschenbaum received a portion ($142,852.50) for appellate work associated with the Plan on an interim basis.  While Kirschenbaum & Kirschenbaum initially characterized the $142,852.50 in fees as Plan services, when the Court adjourned this request to

determine whether to make such award, Kirschenbaum & Kirschenbaum re-classified this portion of the application as compensation for work performed for the bankruptcy estate.  It appears to the Court that Kirschenbaum & Kirschenbaum re-characterized the services to ensure that an interim award from bankruptcy estate assets would pass muster.  By so doing, the issue of whether the Bankruptcy Court had the requisite jurisdiction to authorize the use of bankruptcy estate funds to satisfy an award for Plan services for the trustee's professionals was never directly before the Bankruptcy Court.  At the time the firm re-characterized the services from Plan services to estate services, *The Robert Plan III* had been issued, and the Trustee had taken an appeal to the Second Circuit.  Having now classified it again as Plan work, the Court will examine this portion of the request on a final basis, including the threshold issue of whether, in light of the decisions by the District Court and the Second Circuit, the Bankruptcy Court should authorize an award to Kirschenbaum & Kirschenbaum from bankruptcy estate funds for Plan services.

The US Trustee takes the position that none of the services rendered by Kirschenbaum & Kirschenbaum relating to termination of the Plan and the litigation with the DOL are compensable from the bankruptcy estate on a statutory basis. The US Trustee also asserts that the Trustee should have obtained approval of the fees and expenses as calculated under ERISA, and should have exhausted the Plan assets in payment of those fees and expenses prior to seeking an award from bankruptcy estate funds.  Then, and only then, could the Trustee seek authorization from the Bankruptcy Court to pay his professionals with bankruptcy estate funds for performing Plan services.

The Eastern District of New York and the Second Circuit both concluded in this case that the Bankruptcy Court lacks jurisdiction to award compensation to the Trustee from non-estate

assets when the Trustee is acting as Plan administrator. *The Robert Plan III*, 508 B.R. at 268; *The Robert Plan IV*, 777 F.3d at 597. As the Second Circuit put it, "[s]ection 704(a)(11) neither alters the substantive duties of ERISA plan administrators nor establishes substantive rights regarding ERISA plans." *The Robert Plan IV*, 777 F.3d at 597. Under the ERISA statutes, the Trustee and his professionals are free to take compensation from the Plan, subject to a subsequent challenge by the DOL based on a reasonableness standard. The issue put squarely before this Court is whether it can and should award compensation from the bankruptcy estate to Kirschenbaum & Kirschenbaum for services categorized by the firm as related to the Plan.

Based on the appellate history of this case, the Court is not convinced that it has jurisdiction to award fees to Kirschenbaum & Kirschenbaum when performing Plan duties. Assuming the Court has the requisite jurisdiction, the Court does not conclude that an award of fees for Plan services is appropriate in this case. The Trustee was directed by the Court to seek payment of any fees awarded from the Plan first, and then to utilize bankruptcy estate funds. The Trustee could have surcharged the Plan participants to cover the fees incurred by Kirschenbaum & Kirschenbaum in their entirety, but must have been aware that the fees related to the disputes with the DOL and the appellate work would not be compensable under ERISA standards.

This Court has previously held that "[a] chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured." *In re All Island Truck Leasing Corp.*, 546 B.R. 522, 531 (Bankr. E.D.N.Y. 2016). Where a Chapter 7 trustee retains his own firm to represent him or her, the trustee must beware of incurring fees for his or her own benefit:

The bankruptcy court's scrutiny of professional fee applications is particularly important when . . . a trustee and/or his firm has been authorized to serve as an attorney or accountant for the estate.  Ssection 327(d) permits this 'dual capacity' status.  But in light of the fact this recognized conflict of interest provides an opportunity for self-dealing, a trustee may be authorized to serve as counsel only if it 'is in the best interests of the estate.'

*In re Bird*, 577 B.R. 365, 374 (10th Cir. BAP 2017) (citations and footnotes omitted).

The fees Kirschenbaum & Kirschenbaum incurred under the category of Plan services related almost exclusively to the appellate work in this case.  The appellate work did not benefit the Debtors' creditors, contrary to the Trustee's representations to the Court.  In fact, the longer the Trustee directed Kirschenbaum & Kirschenbaum to continue, the greater the potential that the bankruptcy estates would be footing the bill.  As the U.S. Trustee rightly points out, "there existed no controversy when the Trustee embarked upon his ill-fated journey.  There was only the desire of the Trustee to escape the oversight of the DOL relating to his prospective fees."  Objection of United States Trustee Regarding Application for Final Compensation, para. 37.  The Court also agrees with the US Trustee that most of the services rendered by Kirschenbaum & Kirschenbaum related to the Plan for which it now seeks final compensation runs afoul of *In re ASARCO.  In re ASARCO*, 135 S.Ct 2158. In the *ASARCO* decision, the Supreme Court ruled that § 330 (a)(1) does not authorize courts to award compensation for fee-defense litigation.  While the Trustee took prospective action in this case, this is no different from defending the fee after the fact.

For all of these reasons, Kirschenbaum & Kirschenbaum has failed to meet its burden of proof regarding the reasonableness of the fees requested for Plan services.  Therefore, Kirschenbaum & Kirschenbaum is not entitled to compensation from the bankruptcy estate for any portion of the $254,070.47 sought for Plan services.  Based on the final award of

$406,068.76 in fees plus $7,314.81 in expenses to Kirschenbaum & Kirschenbaum, and total

payments received in the amount of $497,530.13 in interim fees, Kirschenbaum &

Kirschenbaum has been overpaid by $84,146.57.

### 4. Disgorgement of Interim Awards of Legal Fees and Trustee's Commissions

11 U.S.C. § 330 (a)(5), which applies to final awards of fees and commissions,

provides the statutory basis for ordering disgorgement:

> The court shall reduce the amount of compensation awarded under
> this section by the mount of any interim compensation awarded under
> Section 331, and, if the amount of such interim compensation exceeds
> the amount  of compensation awarded under this section, may order
> the return of the excess to the estate.

"Section 330(a)(5) provides clear authority to disgorge interim fees.  The authority is

only given, however, if the interim compensation exceeds the actual final award of fees under §

330. The final fee award depends on the reasonableness of the fees charged."  *In re Headlee

Management Corp.*, 519 B.R. 452, 458 (Bankr. S.D.N.Y. 2014).   In a prior case involving the

Trustee, this Court recognized that once the Court fixes the total compensation for professionals

in a case, interim awards could be subject to disgorgement if the prior awards exceeded the final

award.  *In re All Island Truck Leasing Corp.*, 546 B.R. at 535.  The Trustee has received

payments in excess of what he is entitled to receive based on the statutory formula set forth in §

326(a), part of which was taken from the bankruptcy estates in violation of the Court's prior

directive.  Consistent with the Trustee's conduct in *In re All Island Truck Leasing Corp.*, the

Trustee again made representations to the Court that he failed to follow.  The Trustee also failed

to comply with the Court's directive, and offered no explanation for his failure.

Kirschenbaum & Kirschenbaum was also overpaid in this case.  The overpayment was caused in part by the firm's re-categorization of Plan work as bankruptcy estate work in its Declaration in Support of the Third Interim Application.  It appears that this was done in order to avoid the issue of whether fees sought for Plan services should be paid from the bankruptcy estates.  Upon final examination, the Court finds that it lacked jurisdiction to make an award of $142,852.50 for Plan services.  Even if it has the jurisdiction to award fees to Kirschenbaum & Kirschenbaum for Plan services, they provided no benefit to the Debtors' estates.  The only party which could have benefitted from this work was Kirschenbaum & Kirschenbaum.  Based on this analysis, the Court revises its prior interim award to $0.

While the vast majority of decisions directing disgorgement of interim fees under § 330(a)(5) concern administratively insolvent cases, there are several decisions directing disgorgement of prior fee awards on other grounds, or a reconsideration and reduction of a prior interim fee award.  In the case *In re GSC Group, Inc*., the Bankruptcy Court directed the partial disgorgement of fees paid to a financial advisor retained by a Chapter 11 debtor on an interim basis.  502 B.R. at 750, 751.  At the final application stage, the Bankruptcy Court found that partial disgorgement of the prior interim award was warranted to account for the financial advisor's refusal to acknowledge that it had acted improperly in failing to disclose to the bankruptcy court a fee sharing arrangement.  *Id.*  In *In re Strand*, the Court of Appeals for the Ninth Circuit upheld a final award of compensation to a Chapter 7 trustee's counsel which included a reduction in a prior interim fee award for services rendered in litigation with the IRS.  375 F.3d 854 (9th Cir. 2004).  While the reduction did not require disgorgement due to the size of the overall award, the Ninth Circuit based its decision on the premise that all interim awards are subject to reexamination and adjustment at the end of the case.  *Id.* at 858.  Furthermore, the

reviewing court need not find that the applicant engaged in misconduct to justify modification of a prior award.  *Id*.

### Conclusion

For the reasons set forth above, the Trustee is awarded commissions in the amount of $58,018.98 plus expenses of $2,300.69.  The Trustee has received interim commissions in the amount of $66,602.39, resulting in an overpayment in the amount of $6,282.72.  Kirschenbaum & Kirschenbaum is awarded fees in the amount of $406,068.75 and expenses in the amount of $7,314.81.  Kirschenbaum & Kirschenbaum has received interim fees in the amount of $497,530.13, resulting in an overpayment of fees in the amount of $84,146.57.  The Trustee is directed to disgorge $6,282.72. to the Debtors' consolidated estates and Kirschenbaum & Kirschenbaum is directed to disgorge $84,146.57 to the Debtors' consolidated estates.  The Trustee is further directed to settle an amended Final Report, consistent with these findings, upon the US Trustee and all creditors in the bankruptcy cases.    The Court shall enter an order consistent with this Memorandum Decision.



**Dated: Central Islip, New York**
**March 1, 2018**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**